UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |
| | |
| VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, | |
| Plaintiffs, | |
| v. | |
| ORANGE BANG, INC., and MONSTER ENERGY COMPANY, | Adv. Pro. No. |
| Defendants. | |

**DEBTORS' ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT**

Vital Pharmaceuticals, Inc. ("VPX") and JHO Intellectual Property Holdings, LLC ("JHO") (collectively, "Plaintiffs"), each a Debtor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), file this complaint (this "Complaint") against Orange Bang, Inc. ("Orange Bang") and Monster Energy Company ("Monster") (collectively, "Defendants"). As the basis for this Complaint, Plaintiffs rely on *Declaration of Elizabeth A. Morris in Support of Debtors' Motion*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

1

11939159-2

*for Summary Judgment and Incorporated Memorandum of Law* (the "Morris Declaration") filed concurrently herewith and state as follows:

## NATURE OF THIS ACTION

1.  The Debtors have commenced a process to market and sell their business for the benefit of all stakeholders. In order to bring that process to a successful conclusion, the Debtors, and bidders, need to know that the fee regime that governs the Debtors' use of their Bang trademark will travel to the purchaser together with the business. However, Defendants, who themselves litigated to obtain that structure—a perpetual 5% tax payable to Defendants—have indicated they will attempt to obstruct the sale by asserting that the fee regime cannot apply to any purchaser unless Defendants consent. The Plaintiffs bring this action to obtain the declarations necessary to forestall Defendants' obstruction and ensure a successful sale process for the benefit of all stakeholders.

2.  In particular, Plaintiffs seek an order from this Court declaring that res judicata bars Defendants from re-litigating the terms under which the Debtors, or any purchaser of the Debtors' business, are entitled to use the Bang Mark. In other words, the Debtors require a declaration that confirms exactly what Defendants previously asked for—that *anyone* operating the Bang energy drink business is subject to the fee regime. In the alternative, to the extent res judicata does not fully resolve the issues, the Debtors seek a declaration that the right to operate subject to the fee regime is fully-transferable, including to a purchaser of all or substantially all of the Debtors' assets and subsequent purchasers, without the consent of Defendants.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2

11939159-2

4. Venue is proper under 28 U.S.C. § 1409(a). This adversary proceeding is related to the Chapter 11 Cases, which are pending in this Court.

5. This adversary proceeding is commenced pursuant to:

(a) Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which allows for a proceeding "to determine the validity, priority, or extent of a lien or other interest in property";

(b) Rule 7001(9) of the Bankruptcy Rules, which allows for a proceeding to obtain a declaratory judgment relating to the foregoing; and

(c) 11 U.S.C § 105(a), which allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" title 11 of the United States Code (the "Bankruptcy Code").

6. Declaratory relief is appropriate pursuant to both Rule 7001 of the Bankruptcy Rules and 28 U.S.C. §§ 2201 – 02 (the "Declaratory Judgment Act").

7. As set forth below, an actual legal controversy exists with respect to the declaratory relief requested herein.

8. Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiffs consent to the entry of a final judgment or order with respect to this Complaint if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**PARTIES**

9. Plaintiff VPX is a Florida corporation with its principal place of business in Weston, Florida.

10. Plaintiff JHO is a Florida limited liability company with its principal place of business in Weston, Florida. Each Plaintiff is a Debtor in the Chapter 11 Cases.

3

11939159-2

11. Defendant Orange Bang is a California corporation with its principal place of business in Sylmar, California.

12. Defendant Monster is a Delaware corporation with its principal place of business in Corona, California.

## BACKGROUND

### I. THE 2010 SETTLEMENT AGREEMENT

13. Plaintiff VPX and Defendant Orange Bang both sell drink products branded "Bang" and own U.S. trademark rights to the "Bang" mark. In 2009, Orange Bang commenced an action in the United States District Court for the Central District of California against VPX alleging, in summary, that VPX violated the Lanham Trade-Mark Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act") because its use of the word "Bang!" on a bodybuilding product infringed upon Orange Bang's trademark registrations for its own "Bang" mark (the "2009 Action").

14. On August 11, 2010, VPX and Orange Bang resolved the 2009 Action by entering into a confidential settlement agreement (the "2010 Settlement Agreement"). *See* Morris Decl. Ex. 1. In general, the 2010 Settlement Agreement set forth certain permissible channels (for both VPX and Orange Bang) for then-existing "Bang" branded products, and provided that: (i) VPX was permitted to use VPX's version of the "Bang" mark (the "Bang Mark") regardless of trade channel for products that meet certain criteria, and (ii) VPX was permitted to use the Bang Mark within specified trade channels for products that meet other criteria. *See id*. In particular, the 2010 Settlement Agreement sets forth certain marketing and sales restrictions relating to the parties' respective "Bang" marks (collectively, the "Paragraph 7 Restrictions"). *See id*., at ¶¶ 7A–7D.

15. The Paragraph 7 Restrictions provide, in relevant part:

4

      (a)    Without restriction, VPX may use the Bang Mark to market and sell "nutritionally fortified," "creatine-based" dietary supplement and nutritional products (the "<u>Creatine-Based Products</u>"). *Id.* ¶¶ 7A–7C.

      (b)    VPX may also use the Bang Mark to market and sell "any nutritionally fortified beverage which enhances performance, and which is not creatine-based" (the "<u>Paragraph 7D Products</u>"), but only through "vitamin and nutritional supplement stores to include but not limited to GNC, Vitamin Shoppe, other specialty vitamin and nutrition stores, gyms and health clubs or to the vitamin and dietary supplement section only of any convenience or other stores" (the "<u>Nutritional Channel</u>"). *Id*. ¶ 7D.

    16.    The 2010 Settlement Agreement "bind[s] and inure[s] to the benefit of the Parties [t]hereto and their respective agents, servants and employees, their successors, predecessors and assigns of each of them, separately and collectively." *Id.* ¶ 14. VPX and Orange Bang are original parties to the 2010 Settlement Agreement, *id.* § I; JHO has been adjudicated a successor-in-interest of VPX under the 2010 Settlement Agreement, s*ee* Morris Decl. Ex. 2 Final Arbitration Award (the "<u>Award</u>") § III.X at 162; and nine years after the 2010 Settlement Agreement was executed, and unknown to VPX at the time, Orange Bang assigned to Monster all of its rights and interest in the 2010 Settlement Agreement, while purporting to retain all rights and interest in the Bang Mark, including Orange Bang's trademark rights. *See* Award § II.M. at 42. Notwithstanding Orange Bang's purported assignment of the claims related to the settlement agreement (and retention of its trademark rights to the Bang Mark), Monster and Orange Bang agreed to split any recoveries on all claims—including trademark-related claims—equally. *See id.*

## II. VPX'S ASSIGNMENT OF THE BANG MARK

17. On July 13, 2017, VPX assigned the Bang Mark to JHO, with JHO becoming the registered owner. VPX then entered into a Trademark License Agreement with JHO for the right to use the Bang Mark. *See* Order Compelling Arbitration 10-11, D.C. ECF No. 50.

## III. THE ARBITRATION

18. On June 16, 2020, Defendants served a joint demand for arbitration upon VPX (with JHO subsequently added) wherein Monster asserted breach of contract claims as assignee of the 2010 Settlement Agreement and Orange Bang asserted trademark infringement claims as to the Bang Mark. *See* Morris Decl. Ex. 3. Defendants asserted that Plaintiffs' use of the Bang Mark in connection with their line of Bang energy drink products (the "Bang Products" or "Bang Energy"), launched after the execution of the 2010 Settlement Agreement, violated the 2010 Settlement Agreement and infringed on Orange Bang's rights in its own "Bang" mark. *See id*.

19. The arbitration (the "Arbitration") final hearing took place via Zoom from October 4 to October 14, 2021. *See* Award at 4 (Preamble). The Arbitration "[w]as administered by a neutral third-party virtual bailiff" and considered "the evidence, exhibits, demonstratives, testimony, and arguments of the parties." Award at 4–5 (Preamble). The arbitrator, Bruce Isaacs (the "Arbitrator"), also considered several closing arguments, including closing arbitration briefs, closing reply briefs, post-hearing briefs, including a fully-briefed motion to clarify an interim arbitration award (issued on January 6, 2022), and oral arguments post-dating the interim arbitration award and pre-dating the final arbitration hearing. *See id.* Defendants assert that they "had a full and fair opportunity to present [their] case during the eight-day hearing," "submitted post-hearing briefs and reply briefs, and then appeared for a second round of closing arguments before [the Arbitrator]," whom they assert "issued a well-reasoned decision that extensively

evaluated the evidence and applicable law." Morris Decl. Ex. 4 ("Mot. to Confirm Award") ¶ IV.B at 14–15.

## IV. THE AWARD

20. The Arbitrator issued the Final Arbitration Award (i.e., the Award) on April 4, 2022. *See* Award at pp. 4–5 (Preamble). The Award states that it is "a full and final adjudication of all claims which were, or which could have been, submitted to the arbitrator by any and all of the parties in connection with th[e A]rbitration." *Id.* § V at 177.

21. Among the "core disputes" in the Arbitration was whether the Bang Products are Creatine-Based Products or Paragraph 7D Products. If the Bang Products are Paragraph 7D Products, then VPX allegedly was in breach of the 2010 Settlement Agreement by marketing and selling the Bang Products outside the Nutritional Channel. *See* Award § II.F at 31. According to the Arbitrator, even Orange Bang's trademark-related claims turned on whether the Bang Products are Paragraph 7D Products because the 2010 Settlement Agreement "is essentially an agreement not to sue for trademark infringement" as long as VPX stays its "agreed upon lane." Award § II.L at 41 n.8. Indeed, the entire Arbitration, according to the Arbitrator, "turn[ed] on whether or not the B[ang] Products, and VPX's other products which make use of the B[ang] [M]ark, are 'creatine-based' or not, whether that results in a breach of the [] Settlement Agreement or not and whether that rises to the level of trademark infringement or not." Award § II.O at 44.

22. The Arbitrator concluded that "in order for a product to be 'creatine-based' within the meaning of . . . the [] Settlement Agreement, creatine must be a fundamental, a main or a carrying ingredient in that product." Award § III.A at 48. The Arbitrator further concluded that creatine was not a fundamental, a main, or a carrying ingredient in the Bang Products at issue. Award § III.B at 57. Ultimately, the Arbitrator determined that the Bang Products are not Creatine-

Based Products, but rather Paragraph 7D Products subject to the Paragraph 7 Restrictions.  Award § III.F at 63.

23. Based on this determination, the Arbitrator awarded Defendants a choice to collect monetary damages to "address[] the issue of *past* harm" relating either to Defendants' breach of contract claims or their trademark infringement claims.  Award § III.O at 141 (emphasis in original); *see also id.* § IV.A at 174 (the alternative past monetary component of the Award, which Defendants jointly elected, awarded "past damages from VPX and JHO through September 19, 2021" as "a disgorgement of profits attributable to infringement of the B[ang] [M]ark in the amount of $175 million.").

24. The Arbitrator also issued a permanent injunction severely restricting VPX's ability to use the Bang Mark (the "Permanent Injunction"), an equitable remedy directed toward the Bang Products to address "potential future harms which are separate, independent, and distinct from the compensatory damages awarded in [the] Award to recompense [Orange Bang] for" past harm.  Award § III.O at 141.  However, the Arbitrator also permitted Plaintiffs to opt for an alternative equitable remedy (the "Continuing Fee Election"), which consists of:

(a) the entry of an indefinite stay of enforcement on the Permanent Injunction so long as Plaintiffs pay the Continuing Fee (as defined below); and

(b) the creation of an obligation to pay Defendants (5%) of the Bang Products' net sales, due quarterly (the "Continuing Fee").  *See* Award § III.S at 150; *see also id.* § IV.B at 175.

25. Should Plaintiffs ever fail to pay the Continuing Fee, "the Permanent Injunction shall automatically take effect without the need for any further action by a court or by an arbitrator."  Award § U at 157.

26. In sum, the Continuing Fee Election, and the Continuing Fee Election alone, grants Plaintiffs the right to continue using the Bang Mark so long as Plaintiffs continue to make the quarterly Continuing Fee payments to Defendants. The Continuing Fee Election imposes no obligation on Plaintiffs to conform to any quality standards in connection with Plaintiffs' use of the Bang Mark. Nor does the Continuing Fee Election impose an obligation on Defendants to prescribe or enforce quality control standards. Orange Bang likewise has no quality control rights—under the Continuing Fee Election or otherwise—over Plaintiffs' use of the Bang Mark.

27. The Arbitrator made several findings and conclusions regarding the binding effect of the Award on parties using the Bang Mark in connection with the Bang Energy business in the future:

(a) The Arbitrator predicated imposition of liability on JHO on the conclusion that when JHO took assignment of the Bang Mark from VPX, any use restrictions already applicable to VPX with regard to the mark necessarily traveled to JHO. Award § III.X 164 n.48 ("JHO itself obtained its initial grant of rights regarding the Bang tradename from VPX via a 2017 assignment . . . Because JHO's Bang rights derive from a grant of rights from VPX, and because JHO is a successor-in-interest to VPX in this regard, JHO's Bang rights are likewise subject to the [use restrictions set forth in] Settlement Agreement."). In other words, the conditions for JHO's use of the mark in harmony with Orange Bang's mark transferred to JHO together with the Debtors' Bang Mark itself.

(b) The Award made the Permanent Injunction binding on Plaintiffs as well as several other categories of persons, including any of Plaintiffs' "officers, agents, servants, employees, successors, and assigns, and all those persons acting in active concert or participation with them" (the "Categories of Persons Bound"). Award § III.O at 135–36.

11939159-2

(c) The Arbitrator intended for "VPX and JHO and Categories of Persons Bound to comply with the [Continuing Fee]" and thus "render[] the need for the Permanent Injunction unnecessary in the first place." Award § III.P at 144. Indeed, as the Arbitrator reasoned, "corporate entities like VPX and JHO operate through living and breathing people and therefore all of these Categories of Persons Bound should be bound by the Permanent Injunction, otherwise the Permanent Injunction is an empty basket which provides no practical protection and does not serve its intended purposes." Award § III.Q at 145.

(d) The Arbitrator held that determining whether a particular person "fall[s] within the Categories of Persons Bound" was a "determination to be made by a court at the appropriate time in a subsequent proceeding . . . because the [A]rbitrator does not have jurisdiction to make such binding specific adjudications." *Id.* (noting that "[t]he opportunity to be heard in a subsequent proceeding will protect VPX's due process rights in this regard.").

## V.  ENTRY OF JUDGMENT CONFIRMING AWARD

28. On April 6, 2022, Defendants moved in the United States District Court for the Central District of California (the "District Court")[2] to confirm the Award. *See* Mot. to Confirm Award ¶ I at 1. Under the 2010 Settlement Agreement, the District Court could only confirm the Award if it had subject matter jurisdiction over the claim or controversy resolved by the Arbitrator. *See* Settlement Agreement ¶ 18.a. This jurisdiction was confirmed by the District Court's confirming the Award. *See generally* Morris Decl. Ex. 5 ("Order Confirming Award").

29. The Award, as confirmed by the District Court, arises under and is governed by California law.

---

[2] The District Court Action is captioned *Vital Pharms., Inc. and JHO Intellectual Prop. Holdings, LLC v. Orange Bang, Inc. and Monster Energy Co.*, No. 5:20-cv-1464 (the "District Court Action").

30. In their Motion to Confirm Award, Defendants further argued that the District Court had subject matter jurisdiction to confirm the Award because:

(a) The Arbitration involved federal claims over which the District Court had original jurisdiction; to wit: "claims for trademark infringement and false designation of origin under the Lanham Act." Mot. to Confirm Award ¶ IV.A.1 at 12.

(b) The District Court had supplemental jurisdiction over the remaining Arbitration claims, including Defendants' breach of contract claim, because they were "part of the same case or controversy as" Defendants' federal claims. *Id*.

31. On September 29, 2022, the District Court entered the Award as a judgment in the District Court Action, *see* Morris Decl. Ex. 6 (the "Judgment") at 1 ("[T]he Final Arbitration Award entered by Bruce Isaacs . . . on April 4, 2022 . . . shall have the same force and effect as a civil judgment rendered by this Court.").

32. While Plaintiffs have appealed (the "Appeal") the District Court's entry of the Judgment, *see* Morris Decl. Ex. 7 ("Notice of Appeal"), the fact remains that, under the current circumstances, the Debtors are entitled to use the Bang Mark without restriction, including to market and sell the Bang Products.

## VI.  THE CHAPTER 11 CASES

33. On October 10, 2022, each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered.

34. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108, 11 U.S.C. §§ 1107, 1108.

11939159-2

35. On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") [ECF No. 245]. On November 23, 2022, the U.S. Trustee reconstituted the Committee [ECF No. 400]. No request has been made to the Court to order the appointment of a trustee or examiner.

36. On January 12, 2023, the Court entered a final order (the "Final DIP Order") [ECF No. 638] authorizing the Debtors to obtain postpetition financing under the *Superpriority Secured Debtor-in-Possession Credit Agreement* (the "DIP Agreement"). To avoid an event of default under the DIP Agreement, the Debtors are required to achieve certain milestones (the "DIP Milestones"), including, among other things, designating a stalking horse bidder on or before March 13, 2023, holding an auction, if necessary, on or before April 19, 2023, and closing a sale of all or substantially all of the Debtors' assets on or before May 17, 2023. *See* Final DIP Order ¶ 46; Final DIP Order, Ex. B (DIP Agreement) § 5.18.

37. On January 27, 2023, in accordance with the DIP Milestones the Debtors filed the Bid Procedures Motion,[3] seeking, among other things, authority to sell all or substantially all of the Debtors' assets upon the conclusion of the Debtors' marketing and sale process. This Court has scheduled a hearing on the Bid Procedures Motion for February 23, 2023, at which hearing the Court will consider approval of proposed bidding procedures, pursuant to which the Debtors will solicit and select the highest or otherwise best offer for their assets.

---

[3] *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [ECF No. 707]

11939159-2

38. As stated in the Bid Procedures Motion, the Debtors are seeking authority to sell all or substantially all of their assets. *See* ECF No. 707. The Bang Products account for roughly 95% of the Debtors' total sales, making them the Debtors' best-selling products. Accordingly, Plaintiffs' interest in the Bang Mark, including the scope of Plaintiffs' rights under the Continuing Fee Election, are essential in order for any potential purchaser to value the Debtors' business in connection with the Debtors' sale process. Defendants' threat of new litigation will likely meaningfully and adversely affect the amount that any potential buyer will be willing to offer for the business.

### VII. URGENCY OF RELIEF

39. Time is of the essence. The Bid Procedures Motion seeks to establish March 13, 2023 as the deadline for the Debtors to seek approval of a Stalking Horse Bid (as defined in the Bid Procedures Motion) and April 11, 2023 as the deadline for interested parties to submit bids. It is imperative that potential Stalking Horse Bidders and other interested parties have certainty with respect to application of the Continuing Fee Election and use of the Bang Mark. Without such certainty prior to the above deadlines, the entire sale process may be impaired.

### RESERVATION OF RIGHTS

40. Plaintiffs file this Complaint with full reservation of rights with respect to the District Court Action and/or Appeal. The assertion of any claims pursuant to this Complaint is not intended as, and should not be deemed or construed as, a waiver of any position asserted by Plaintiffs in the District Court Action and/or the Appeal.

# COUNT I

### DECLARATORY JUDGMENT
**(Orange Bang and Monster are precluded from re-litigating issues resolved by the Award)**

41. The allegations set forth in Paragraph 1 through Paragraph 39 are incorporated by reference as if set forth fully herein.

42. An actual legal and substantial controversy exists as to whether Defendants are precluded from arguing that a buyer of the Debtors' assets may continue to use the Bang Mark subject to the terms and conditions of the Continuing Fee Election.

43. This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act.

44. The District Court confirmed and entered the Award, including the Continuing Fee Election, as the Judgment in the District Court Action.

45. Any claims relating to the use of the Bang Mark to market or sell the Bang Products by purchaser(s) or subsequent purchaser(s) of all or substantially all of the Debtors' assets (or the Continuing Fee Election alone) would equate to the same case or controversy adjudicated by the Arbitration and resolved by the Award and the entry of the Judgment:

46. The Award, as confirmed by the Judgment, also fully resolved any of Defendants' prospective claims as to, and quantified any damages that could arise from, the use of the Bang Mark by Plaintiffs and their privies to market and sell the Bang Products in the future.

47. Moreover, any purchaser(s) or subsequent purchaser(s) of all or substantially all of the Debtors' assets (or the Continuing Fee Election alone) would be in privity with Plaintiffs as to the Arbitration and the Award, as confirmed by the Judgment.

48. Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendants are precluded from arguing that purchaser(s) or subsequent purchaser(s) of all or substantially all of

the Debtors' assets, including purchaser(s) or subsequent purchaser(s) of the Continuing Fee Election itself, cannot use Bang Mark in accordance with the terms of the Award, as confirmed by the Judgment.

## COUNT II

### DECLARATORY JUDGMENT
**(Debtors may sell, assign, or otherwise transfer the Continuing Fee Election Without the Consent of Defendants)**

49. The allegations set forth in Paragraph 1 through Paragraph 39 are incorporated by reference as if set forth fully herein.

50. To the extent res judicata does not fully resolve application of the Award, as confirmed by the Judgment, to a purchaser or subsequent purchaser of the Debtors' assets, an actual legal and substantial controversy exists as to whether Plaintiffs may sell, assign, or otherwise transfer their interest in the Continuing Fee Election under Bankruptcy Code § 363, including to a purchaser of all or substantially all Debtor assets, without Defendants' consent.

51. This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act.

52. The District Court has confirmed and entered the Award, including the Continuing Fee Election, as the Judgment in the District Court Action.

53. Bankruptcy Code § 363 allows the Debtors, after giving proper notice, to sell property of the Debtors' estates outside the ordinary course of business.

54. The Debtors' estates include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

55. The Award, as confirmed by the Judgment, entitles Plaintiffs to continue to use the Bang Mark in connection with the marketing and sales of the Bang Products based on Plaintiffs' own election: the Continuing Fee Election. As such, the Continuing Fee Election is an equitable

interest in the Bang Mark that is held by the Debtors and was in existence prior to the commencement of the Chapter 11 Cases. *See, e.g.*, *In re Tradewinds Airlines, Inc.*, No. 08-20394-(AJC), 2009 WL 393858, *2 (Bankr. S.D. Fla. Feb. 10, 2009) ("The Default Judgment and the right to attempt to collect on the Judgment are [estate] property."); *In re Merchants & Farmers Bank v. L & T Constr., Inc.*, NO. 3:09-cv-582 (S.D. Miss. June 9, 2010) (stating that an arbitration award was property of the debtor's estate).

56. As an interest belonging to the Debtors' estates, the Debtors may sell, assign, or otherwise transfer their interest in the Continuing Fee Election under Bankruptcy Code § 363, including to a purchaser of all or substantially all Debtor assets, without Defendants' consent.

57. In the alternative, if the Continuing Fee Election is deemed an executory contract, the Debtors may assume and assign the Continuing Fee Election to a purchaser of all or substantially all Debtor assets without the consent of Defendants.

58. The Continuing Fee Election grants Plaintiffs a right to preserve the stay of enforcement of the Permanent Injunction. This right is exercisable by making quarterly Continuing Fee payments to Defendants.

59. The Continuing Fee Election imposes only one obligation on Plaintiffs: that Plaintiffs continue to pay the Continuing Fee in accordance with the terms of the Award, as confirmed by the Judgment.

60. The Award, as confirmed by the Judgment, does not permit Defendants to revoke or modify the Continuing Fee Election, nor does it impose any obligations on Plaintiffs other than to pay the Continuing Fee.

61. Accordingly, to the extent the Continuing Fee Election is deemed an executory contract, so long as the purchaser provides adequate assurance that it will continue to pay the

Continuing Fee, the Debtors may assume and assign the Continuing Fee Election without the consent of the Defendants pursuant to Bankruptcy Code § 365.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter an order in substantially the form of the Proposed Order submitted herewith:

a) confirming through a declaratory judgment that Defendants are estopped from claiming that purchaser(s) or subsequent purchaser(s) of the Debtors' assets, including purchaser(s) or subsequent purchaser(s) of the Continuing Fee Election itself, cannot use the Bang Mark in accordance with the terms of the Award, as confirmed by the District Court and subsequently entered as the Judgment.

b) confirming through a declaratory judgment that the Continuing Fee Election is fully transferable without the consent of Defendants.

c) granting such other and further relief as the Court deems just and proper.

Dated: February 17, 2023
      Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
       tj.li@lw.com
       brian.rosen@lw.com
       jon.weichselbaum@lw.com

– and –

Respectfully submitted,

*/s/ Jordi Guso*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
       mniles@bergersingerman.com

11939159-2

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

*Co-Counsel for Plaintiffs*

11939159-2