UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE:<br><br>VITAL PHARMACEUTICALS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11 Case<br>Bankr. Case No. 22-17842 (PDR)<br>(Jointly Administered) |
| VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ORANGE BANG, INC., and MONSTER ENERGY COMPANY,<br><br>Defendants. | Bankr. Adv. Pro. No. 23-01031 (PDR) |

**JOINT MOTION OF MONSTER ENERGY COMPANY AND ORANGE BANG, INC. FOR ENTRY OF AN ORDER PURSUANT TO 28 U.S.C. §§ 157(d) AND 1412 AND BANKRUPTCY RULE 5011(a) WITHDRAWING THE REFERENCE AND TRANSFERRING VENUE OF ADVERSARY PROCEEDING TO <u>CENTRAL DISTRICT OF CALIFORNIA</u>**

Monster Energy Company ("<u>Monster</u>") and Orange Bang, Inc. ("<u>Orange Bang</u>" and together with Monster, the "<u>Movants</u>" or "<u>Defendants</u>"), defendants in the above-captioned adversary proceeding (the "<u>Adversary Proceeding</u>") commenced by debtors and plaintiffs Vital

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC ("Plaintiffs" and, together with their affiliated debtors, the "Debtors"), hereby move this Court pursuant to 28 U.S.C. §§ 157(d) and 1412, Rule 5011(a) of the Federal Rules of Bankruptcy Procedure, S.D. Fla. Local Rule 87.3, and Bankr. S.D. Fla. Local Rule 5011-1 for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), withdrawing the reference of the Adversary Proceeding to the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") and transferring the Adversary Proceeding to the United States District Court for the Central District of California (the "California District Court").

**In an effort to obtain a ruling on the merits in what Movants respectfully submit is the improper venue for this proceeding, concurrent with their filing of the *Debtors' Adversary Complaint for Declaratory Judgment* on February 17, 2023 [Adv. D.I. 1], the Debtors filed a *Motion for Summary Judgment* [Adv. D.I. 2]. That motion has been calendared for hearing in the Bankruptcy Court on March 29, 2023. Because a dispositive motion should be considered by the court in which venue is proper, and because it is this Court, and not the Bankruptcy Court, which must determine where venue is proper, Movants request that this motion be considered on an expedited basis.**

In support of this motion, Defendants respectfully state as follows:

## PRELIMINARY STATEMENT

In this Adversary Proceeding, Plaintiffs ask the Bankruptcy Court to decide whether they may transfer to a third party their rights and obligations under a judgment issued by the California District Court that confirms an arbitration award issued against Plaintiffs in a separate breach of contract and trademark infringement action. Because Plaintiffs' claims would require the Bankruptcy Court to usurp the California District Court's authority over its own judgment—as well as resolve numerous, dispositive issues of federal trademark law—Defendants request that

69077668;2

the Court (i) withdraw the reference of the Adversary Proceeding to the Bankruptcy Court, and (ii) transfer the Adversary Proceeding to the California District Court.

Before the Debtors instituted the Chapter 11 bankruptcy proceedings, Defendants Orange Bang and Monster brought an arbitration against Plaintiffs for infringing Orange Bang's "Bang" trademarks and breaching a prior settlement agreement concerning those marks ("the Arbitration"). After Defendants prevailed on all claims, Arbitrator Bruce Isaacs (the "Arbitrator") issued a 177-page final arbitration award (the "Award"), which sets forth an arrangement that the parties elected in lieu of the imposition of a permanent injunction precluding Plaintiffs from using the Bang mark. Specifically, the Award allows Plaintiffs to use the Bang mark, as long as they pay a "5% continuing royalty" (the "5% Continuing Royalty"). Plaintiffs may choose to stop paying the 5% Continuing Royalty, at which time the permanent injunction would take automatic effect. Following issuance of the Award, the California District Court confirmed the Award and entered judgment (the "California Judgment").

Plaintiffs now seek a declaration from the Bankruptcy Court that they may transfer their rights and obligations under the California Judgment without Defendants' consent, including in a sale of the Debtors' assets in bankruptcy. Although Plaintiffs do not (and cannot) dispute that "trademark licenses are not assignable in the absence of express authorization from the licensor," *In re Ajranc Ins. Agency, Inc*., 2021 WL 2774937, at *2 (Bankr. M.D. Fla. July 2, 2021), they claim that the California Judgment and Award did not actually create a "trademark license." *See* Debtors' Motion for Summary Judgment, Adv. Pro. No. 22-01031-PDR (Dkt. No. 2) ("SJ Motion"), ¶¶ 66-77.  Plaintiffs make a variety of contentions—all based in federal trademark law— to support their claim. *Id*.

In these circumstances, the district court is required to withdraw the automatic reference of the Adversary Proceeding to the Bankruptcy Court. As courts have explained, withdrawal of the bankruptcy reference is mandatory where the bankruptcy proceeding involves "a substantial and material question of both title 11 and non-bankruptcy code federal law." *In re Astro Tel, Inc.*, 2011 WL 4551571, at *2 (M.D. Fla. Sept. 30, 2011); *see* 28 U.S.C. § 157(d). Plaintiffs' own papers demonstrate that their claims raise numerous "substantial and material" questions of bankruptcy and non-bankruptcy law.  Those questions include:

- Whether the California Judgment and Award create a trademark license. SJ Motion, ¶¶ 21, 66.

- Whether the California Judgment, Award, and federal trademark law "prohibit[] Plaintiffs from transferring their rights [to use the Bang mark]." *Id.* ¶ 62.

- Whether a judicially imposed compulsory trademark license can be transferred or assigned under federal trademark law. *Id.* ¶¶ 66-69.

- Whether "the general policy reasons for prohibiting non-consensual assignment of trademark licenses" apply here. *Id.* at ¶¶ 74-77.

- Whether the Debtors' rights under the California Judgment and Award are property of the bankruptcy estate that may be sold under section 363 of the Bankruptcy Code or assigned without Movants' consent under section 365 of the Bankruptcy Code.  *Id.* ¶¶ 3, 41.

Debtors are wrong: the right to use the Bang mark is not assignable absent Movants' consent, and Movants will prove this in the appropriate forum. But the more pressing issue is that numerous courts have withdrawn references of bankruptcy proceedings involving similar non-bankruptcy issues. *See Eli Global, LLC v. Univ. Directories, LLC*, 532 B.R. 249, 252-53 (M.D.N.C. 2015) ("The resolution of Defendant Debtors' trademark infringement claim will require significant consideration of non-Title 11 federal law."); *Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 731 (D. Kan. 1986) (holding that trademark infringement claim based on unauthorized use of mark entailed material and substantial consideration of non-Title 11 law).

Even if withdrawal of the reference were not mandatory, it would still be appropriate for the Court to exercise its discretion to effect such withdrawal "for cause." *See* 28 U.S.C. § 157(d). Indeed, virtually all factors courts use to determine whether to exercise this discretion—including interests of judicial economy and whether withdrawal would impact uniformity in the administration of bankruptcy—favor withdrawal. *See, e.g.*, *In re McCrory Corp.*, 160 B.R. 502, 505-07 (S.D.N.Y. 1993) (finding discretionary withdrawal appropriate because "it is economically and administratively prudent for a district judge, experienced in trademark law, rather than a bankruptcy judge to handle these matters").

Finally, after withdrawing the reference, the court should transfer the Adversary Proceeding to the California District Court. As described in further detail below, the California District Court is already familiar with the factual predicates of the Adversary Proceeding; is best suited to delineate the parties' rights under its own judgment; and has the ability, if the need arises, to seek clarification of the Award directly from the Arbitrator. Courts routinely transfer venue in even less compelling circumstances. *See, e.g.*, *UMB Bank, N.A. v. Sun Capital Partners V, LP*, 2019 WL 9049056, at *2 (S.D. Fla. June 12, 2019) ("[T]he single most significant circumstance favoring transfer . . . is the existence of a related action in another district."); *Plotkin v. United States*, 2011 WL 1103469, at *4 (M.D. Fla. Mar. 24, 2011) (because "the original judgment" from the Eastern District of Missouri was ambiguous, "jurisdiction . . . should be returned to the Eastern District of Missouri—the court best suited to interpret and apply the judgment").

The Debtors will doubtless argue that the delay caused by the withdrawal of the reference will severely prejudice them by delaying the sale process, and by such delay will trigger a default under the sale timing benchmarks in the order approving its debtor-in-possession financing (the "DIP Financing Order"). But any such problem is self-created by Plaintiffs' delay in filing the

Adversary Proceeding, despite knowing for months that they agreed to deadlines in the DIP Financing Order to arrange for the sale of their assets and that Movants would object to the transfer of the right to use the Bang trademark without their consent. Regardless, withdrawal of the reference is mandatory, and there is no legal or factual reason in any event that the timing benchmarks in the DIP Financing Order cannot be extended to permit time for the California District Court to rule. Nor is there any reason the California District Court cannot do so expeditiously.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are 28 U.S.C. §§ 157(d) and 1412, Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), S.D. Fla. Local Rule 87.3, and Bankr. S.D. Fla. Local Rule 5011-1.

## BACKGROUND

The following facts are set forth in the *Debtors' Adversary Complaint for Declaratory Judgment* filed on February 17, 2023 [Adv. D.I. 1], *Motion for Summary Judgment* [Adv. D.I. 2], and the *Declaration of Elizabeth A. Morris in Support of Debtors' Motion for Summary Judgment and Incorporated Memorandum of Law* [Adv. D.I. 3], or are matters subject to judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.[2]

I.  **Orange Bang Litigation and the 2010 Settlement Agreement**

Orange Bang, a family-owned beverage business established in 1971, is the rightful owner of several federal registrations for the "Bang" trademarks. In 2008, Plaintiff-Debtor Vital

---

[2] Movants request that the Court take judicial notice of all documents included by Movants in the designation of record that Movants are filing separately pursuant to Fed. Bankr. R. 5011 and Local Rule 5011-1.

Pharmaceuticals, Inc. ("VPX") began selling various beverages unlawfully using Orange Bang's marks. As a result, in September 2009, Orange Bang brought an action against VPX in the Central District of California for, among other things, trademark infringement under the Lanham Act. *See Orange Bang Inc. v. Vital Pharmaceuticals Inc.*, Case No. 2:09-cv-06551-MMM-E.

In August 2010, Orange Bang and VPX resolved that litigation in a settlement agreement (the "2010 Settlement Agreement"), which sets forth specific, limited ways in which VPX may use the Bang marks. [Adv. D.I. 3-1]. Among other things, under the 2010 Settlement Agreement, VPX may use the Bang marks to market and sell "nutritionally fortified," "creatine-based" dietary supplement and nutritional products. *Id* at 5. The 2010 Settlement Agreement further provides that VPX may sell products that are not creatine-based, but only under certain conditions not relevant here. *Id.* at 5-6.

## II.    2020 Arbitration and California District Court Action

Following the 2010 Settlement Agreement, VPX dramatically expanded its Bang products and marketing of those products. In 2019, Orange Bang discovered that VPX was breaching the Settlement Agreement by selling products with the Bang marks that did not even purport to contain creatine or comply with the conditions for the sale of non-creatine-based products.

In June 2020, Orange Bang and Monster—to whom Orange Bang had assigned certain rights under the 2010 Settlement Agreement—initiated the Arbitration against VPX.[3] *Orange Bang, Inc. and Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, AAA Case No. 01-20-0005-6081. Orange Bang and Monster alleged, among other things, that VPX infringed Orange Bang's marks and breached the 2010 Settlement Agreement. *Id.*

In July 2020, VPX filed a parallel proceeding against Orange Bang and Monster in the

---

[3] VPX affiliate (and Debtor-Plaintiff) JHO Intellectual Property Holdings, LLC ("JHO"), was subsequently made part of the Arbitration and is also bound by the Arbitrator's ruling.

7

Central District Court of California, seeking, among other things, a declaration that it had not, in fact, infringed the Bang marks. *See Vital Pharmaceuticals, Inc. v. Orange Bang, Inc.*, Case No. 5:20-cv-01464 (C.D. Cal.) (the "California District Court Action"). The case was assigned to the Honorable Dale S. Fischer. Judge Fischer granted Orange Bang and Monster's motion to compel arbitration and stayed the California District Court Action pending the Arbitration. *Id.* (Dkt. 50).

### III.    **The Award and California Judgment**

In April 2022, the Arbitrator issued his 177-page Award, finding that Orange Bang and Monster prevailed on all claims and counterclaims at issue in the Arbitration. [Adv. D.I. 3-2.] Among other things, the Arbitrator found that VPX infringed Orange Bang's trademarks in violation of the Lanham Act and the 2010 Settlement Agreement, that the 2010 Settlement Agreement remained in full force and effect, and that VPX should be enjoined from further use of the "Bang" word mark (the "Bang Mark"). *Id.*

Critically, however, the Award also incorporated a remedy that would allow VPX to continue to use the Bang Mark. Typically, as a matter of established federal trademark law, "[t]he imposition of a compulsory license, permitting the infringer to continue use of the mark by paying a court-determined royalty to the trademark owner is not a proper remedy for infringement." *McCarthy on Trademarks and Unfair Competition* § 30:85 (5th ed.). But here, Orange Bang and Monster suggested—and VPX agreed—that, in lieu of a permanent injunction, the Arbitrator permit VPX to use the Bang Mark, in exchange for a royalty payment. As the Arbitrator explained:

> The arbitrator is **not** imposing a compulsory license on a "resisting" Orange Bang. Rather, the arbitrator is granting a compulsory license to a "requesting" Orange Bang, imposed on VPX, a party found to be liable for trademark infringement and found to be liable for breach of the 2010 Settlement Agreement who, at its election, has elected to avoid the corporate realities and meaningful expense of

re-branding that may be the practical result of the Permanent Injunction ….[4]

The Arbitrator thus incorporated this "compulsory license" into the Award, providing that the permanent injunction would not go into effect as long as VPX (and JHO) paid Orange Bang and Monster the 5% Continuing Royalty. The provision for the 5% Continuing Royalty is as follows:

> [I]n lieu of the issuance of the Permanent Injunction as set forth in paragraphs 1 – 3 above, if VPX and JHO pay Orange Bang (as to the trademark infringement claim) and Monster (as to the breach of contract claim for which it seeks specific performance in the future) an amount equal to 5% of "Net Sales" generated from the sales of Bang branded products, including BANG Energy RTD, each quarter beginning July 1, 2022, and payment is made as set forth in this paragraph, then the Permanent Injunction referred to above shall be stayed, and shall not go into effect, so long as VPX and JHO continues to pay the 5% of Net Sales to Orange Bang and Monster each quarter.[5]

On September 29, 2022, Judge Fischer issued the California Judgment, which, among other things, provides that "the Final Arbitration Award entered by [Arbitrator] . . . on April 4, 2022 . . . shall have the same force and effect as a civil judgment rendered by this Court." *See Orange Bang, Inc.*, 5:20-cv-01464 (Dkt. 127) [Adv. D.I. 3-6].

## IV.    **Chapter 11 Bankruptcy and This Adversary Proceeding**

On October 10, 2022, VPX, JHO, and related debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Florida. The Debtors are currently seeking an order of the Bankruptcy Court approving sales procedures and sales and

---

[4] *Id*. at 150 (emphasis in original).

[5] Award at 149-151 (internal footnotes omitted). *See also id.* at 175 ("In lieu of the issuance of the above Permanent Injunction, and based upon the VPX 5% Continuing Royalty Election, **VPX and JHO shall pay Orange Bang and Monster a royalty at the rate of 5%** of VPX's Net Sales (as defined above) derived from the sale of Bang branded products, including BANG Energy RTD, **on an ongoing, continuing basis in the future** as set forth above and for so long as VPX or JHO make any use of the BANG mark.") (emphasis in original).

69077668;2

assumption and assignment of executory contracts and unexpired leases. *See* Bankr. Main Case at Dkt. 896.

On February 17, 2023, as part of the bankruptcy proceedings, Plaintiffs filed this Adversary Proceeding against Monster and Orange Bang. In the Adversary Proceeding, Plaintiffs ask the Bankruptcy Court to "determine the scope of their rights under the Award," SJ Motion, ¶ 40, and declare that "the Debtors may sell, assign, or otherwise transfer their interest" in the use of the Bang Mark under the California Judgment and Award, Adv. Compl., ¶¶ 55-56. Concurrently with their Adversary Complaint, Plaintiffs filed the Motion for Summary Judgment, seeking summary adjudication of their declaratory relief claims.

## V.    The Plaintiffs' Contentions in the Adversary Proceeding

Plaintiffs acknowledge, as they must, that "'the substantial weight of authority holds that under federal trademark law, trademark licenses are not assignable in the absence of some express authorization from the licensor . . . .'"  SJ Motion, ¶ 66 (quoting *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 123 (Bankr. D. Del. 2015).)  Nonetheless, Plaintiffs argue that their right to use the Bang Mark under the California Judgment and Award "is not a trademark license, and is therefore not subject to this rule."  *Id*. Plaintiffs base their theory primarily on the following contentions:

- The California Judgment and Award does not create a trademark license but rather what the Debtors call a "Continuing Fee Election." *Id.* ¶¶ 21, 66.

- The California Judgment and Award does not create a trademark license because Plaintiffs' "right to use the [Bang] Mark comes from a judicial order, not Orange Bang's grant of permission." *Id.* at 24.

- The California Judgment and Award does not create a trademark license because they do not give Orange Bang and Monster "quality control rights over Plaintiffs' use of the [Bang] Mark." *Id.* ¶¶ 70-73.

- "The general policy reasons for prohibiting non-consensual assignment of trademark licenses does not apply."  *Id.* ¶¶ 74-77.

69077668;2

As Plaintiffs' acknowledgements reveal, these contentions are wrong. While Defendants will address them in full at a later juncture, the nature of those contentions make clear that the Bankruptcy Court is not the appropriate forum to adjudicate the Adversary Proceeding.

## ARGUMENT

### I.    The Court Should Withdraw the Reference of the Adversary Proceeding

#### A.    Withdrawal Is Mandatory Because the Adversary Proceeding Involves Consideration of Substantial and Material Issues of Bankruptcy and Non-Bankruptcy Federal Law

Bankruptcy courts are not Article III courts; they derive their jurisdiction from the district courts' referral of bankruptcy matters to bankruptcy judges. *See* 28 U.S.C. § 157(a). Just as a district court may refer a case to the bankruptcy court, it may withdraw that reference. *Id.* § 157(d). Such a withdrawal is mandatory when the court determines that the proceedings will involve a "substantial and material question of both title 11 and non-bankruptcy code federal law."[6] *In re Astro*, 2011 WL 4551571, at *2; *see* 28 U.S.C. § 157(d) (withdrawal required where "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."). The non-bankruptcy question is "substantial and material" when "the resolution of non-bankruptcy law is essential to the dispute." *In re Astro*, 2011 WL 4551571, at *2 (cleaned up). "These requirements reflect Congressional intent to keep non-bankruptcy questions in district courts, which are more experienced at handling questions of non-bankruptcy federal law than the specialized bankruptcy courts." *In re Astro*, 2011 WL 4551571, at *2 (citation omitted).

---

[6] For mandatory withdrawal to apply, courts have also required that "the non-bankruptcy code federal law [] have more than a de minimis effect on interstate commerce" and that "the motion for mandatory withdrawal [] be timely." *In re Astro*, 2011 WL 4551571, at *2 (citation omitted).  There is no dispute that these factors are satisfied here.

69077668;2

Here, withdrawal of the Adversary Proceeding is mandatory because the proceeding involves title 11 and raises not only "substantial and material," but case-dispositive and novel, questions of non-bankruptcy federal law.

      1.    <u>The Adversary Proceeding Raises Substantial and Material Questions Relating to the California Judgment and Award</u>

It is undisputed that the resolution of the Adversary Proceeding requires the interpretation of a particular type of non-bankruptcy federal law: the California Judgment and Award. *See EBI-Detroit, Inc. v. City of Detroit,* 279 F. App'x 340, 345 (6th Cir. 2008) ("The 'laws' of the United States include the orders issued by the federal courts."); *Lopez v. First Union Nat. Bank of Fla*., 129 F.3d 1186, 1193 (11th Cir. 1997) (recognizing that court orders are a "source of law"). As Plaintiffs themselves repeatedly state, they filed this action to "determine the scope of their rights under the Award." SJ Motion, ¶ 40. For example, the Debtors ask the bankruptcy court to declare that the California Judgment and Award:

- Does not create a trademark license. *Id.* ¶¶ 21, 66.

- Grants Plaintiffs the right "to use the Bang Mark without restriction" and "in a more expansive way than [they] otherwise might have been able to use it." *Id.* ¶¶ 29, 69.

- Does not "prohibit[] Plaintiffs from transferring their rights [to use the Bang Mark]." *Id.* ¶ 62.

Defendants dispute Plaintiffs' erroneous interpretation of the California Judgment and Award, and in the appropriate forum, Defendants will prove that the right to use the Bang mark is not assignable without Defendants' consent. Because the California Judgment and Award is essential to the resolution of the Plaintiffs' claims in this proceeding, an Article III district court—and not the Bankruptcy Court—should resolve that dispute. *See, e.g.*, *In re Managed Care*, 756 F.3d 1222, 1234 (11th Cir. 2014) ("The district court is in the best position to interpret its own orders."); *Bombart v. Family Ctr. At Sunrise, LLC*, 520 B.R. 300, 304 (S.D. Fla. 2014) ("The best

69077668;2

authority for delineating the scope of an injunction is, however, the court that issued the injunction."). Indeed, were the Bankruptcy Court to rule on these issues, it would necessarily usurp the authority of the district court—specifically, the California District Court—over its own judgment. Withdrawal of the bankruptcy reference is thus necessary "to ensure that the judicial power of the United States is exercised by an Article III court." *See In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 538 (11th Cir. 1991).

Withdrawal of the reference is particularly appropriate here because only through withdrawal can the parties obtain a ruling directly from the California District Court that issued the California Judgment and the Arbitrator who issued the Award.  As discussed further below, this Court can and should transfer this action to Judge Fischer in the California District Court— who "retains jurisdiction to enforce [the California Judgment and Award]," *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012).

      2.    The Adversary Proceeding Raises Substantial and Material Questions of Federal Trademark Law

Aside from issues regarding the meaning of the California Judgment and Award, this action raises substantial, novel, and dispositive questions of federal trademark law, including:

- Whether federal trademark law "prohibits Plaintiffs from transferring their rights [to use the Bang mark]." *See* SJ Motion, ¶ 62.

- Whether a judicially imposed compulsory trademark license can be transferred or assigned under federal trademark law. *Id.* ¶¶ 66-69.

- Whether an alleged lack of "quality control rights over Plaintiffs' use of the mark" in the California Judgment and Award impacts the assignability of Plaintiffs' rights to use the Bang Mark. *See* SJ Motion, ¶¶ 70-73.

- Whether "the general policy reasons for prohibiting non-consensual assignment of trademark licenses" apply to the Judgment and Final Award. *See* SJ Motion at 26 & ¶¶ 74-77.

These and other issues of federal trademark law require the withdrawal of the bankruptcy reference. Not only are these issues "substantial and material," they are, as far as Defendants can tell, entirely novel. Plaintiffs have not cited, and Defendants have not found, a single case in which a court considered the assignability of a "compulsory trademark license" in a court judgment. The novel questions of trademark law arising out of this unique fact pattern are best suited for the district court, which is "more experienced at handling questions of non-bankruptcy federal law than the specialized bankruptcy courts." *In re Astro*, 2011 WL 4551571, at *2.

Indeed, courts have held that withdrawal of the reference of bankruptcy proceedings is required where those proceedings involved far less complicated or novel issues of trademark or other intellectual property law. *See, e.g.*, *Eli Global*, 532 B.R. at 252-53 ("The resolution of Defendant Debtors' trademark infringement claim will require significant consideration of non-Title 11 federal law, satisfying § 157(d).") (vacated on other grounds); *Burger King Corp.*, 64 B.R. at 731 (holding that trademark infringement claim based on unauthorized use of mark entailed material and substantial consideration of non-Title 11 law); *In re National Gypsum Co*., 145 B.R. 539, 542 (N.D. Tex. 1992) (ordering mandatory withdrawal of reference involving patent law issues that would entail material and substantial consideration of non-bankruptcy federal law); *In re Electro-Mech. Indus., Inc.*, 2018 WL 6587299, at *3-4 (Bankr. S.D. Tex. Feb. 20, 2018) (holding that the determination of a patent's validity and infringement requires mandatory withdrawal).

3.   The Adversary Proceeding Raises Substantial and Material Questions of Bankruptcy Law

The substantial and material bankruptcy law issues that arise in the Adversary Proceeding involve whether the Debtors have the ability to transfer the rights and obligations under the

Arbitration Award . The Debtors assert in the SJ Motion that they are entitled to effectuate this transfer under either section 363 or 365 of the Bankruptcy Code, as follows:

- "[T]he fee regime established pursuant to the award is property of the Debtors' estates. The Debtors are entitled to sell that property, like all other debtor property, pursuant to Section 363 of the Bankruptcy Code. And, even if the fee regime under the award is viewed as a contract—which it is not—the Debtors would still be permitted to assign that contract without Defendants' consent pursuant to Section 365 of the Bankruptcy Code." *See* SJ Motion, ¶ 3.

- "[T]he Court should enter a declaratory judgment finding that any buyer of Plaintiffs' rights in the Bang Mark is entitled to continue selling Bang Products as long as it pays the Continuing Fee because . . . Plaintiffs can assign their rights under the Continuing Fee Election under sections 363 or 365 of the Bankruptcy Code." *See* SJ Motion, ¶ 41.

Specifically at issue, therefore, is whether the Arbitration Award provides for a trademark license that constitutes an executory contract. Absent express consent from the trademark owner, an executory contract cannot be assigned under the provisions of section 365(c) of the Bankruptcy Code (which provides an exception to a debtor's ability to assign an executory contract where applicable law excuses the counterparty from accepting performance from, or rendering performance to, a third party and the counterparty does not consent to the assumption or assignment).

A related substantial bankruptcy issue is whether the 2010 Settlement Agreement, which survives and remains in full force and effect under the Arbitration Award, constitutes an executory contract under section 365 and (i) if so, what amounts would be necessary to effectuate a cure of the defaults under the 2010 Settlement Agreement and otherwise satisfy the requirements of section 365(b) of the Bankruptcy Code, and (ii) if not, whether the Debtors would have the ability to transfer the use of Orange Bang's trademark under section 363 of the Bankruptcy Code in order to circumvent the restrictions on assignability without consent imposed by § 365(c). Movants contend that to receive the benefits of the prospective provisions of the Arbitration Award that are

the centerpiece of the Adversary Proceeding, a buyer would also have to take on the Debtors' rights and obligations under the 2010 Settlement Agreement, with which those prospective provisions are inextricably intertwined. If the 2010 Settlement Agreement is an executory contract, this would require the assumption and assignment of that contract to the buyer in accordance with section 365 of the Bankruptcy Code. This, in turn, would require the cure of all of the Debtors' defaults under the 2010 Settlement Agreement, which should require that the Debtors fully compensate Movants for the Debtors' breaches of the 2010 Settlement Agreement.

### B.    Good Cause Exists for Discretionary Withdrawal of the Reference

Even if the foregoing issues did not require the withdrawal of the reference of the Adversary Proceeding (they do), the Court may and should exercise its discretion to effect such withdrawal "for cause." *See* 28 U.S.C. § 157(d). In deciding whether "cause" exists, "a district court should consider such goals as advancing uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." *In re Parklane*, 927 F.2d at 536 n.5 (citations omitted); *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 742 (11th Cir. 2000). Courts in this Circuit also consider other factors, including whether the proceeding in question is core or non-core and whether withdrawal will promote efficient use of judicial resources. *See, e.g.*, *Hvide Marine Towing, Inc. v. Kimbrell (In re Hvide Marine Towing, Inc.)*, 248 B.R. 841, 844 (M.D. Fla. 2000).

Here, the applicable factors weigh heavily in favor of discretionary withdrawal.

*First,* interests of judicial economy weigh in favor of withdrawing the bankruptcy reference. As described above, the district court—and, in particular, Judge Fischer of the California District Court—is best equipped to address issues relating to the parties' rights under the California Judgment and Award and resolve the novel issues of federal trademark law that predominate this dispute. Courts have exercised their discretion to withdraw in similar circumstances. For example,

in *In re McCrory Corp.*, which, like this action, involved significant issues of trademark law, the court held that discretionary (in addition to mandatory) withdrawal of the reference was appropriate because it would be "economically and administratively prudent for a district judge, experienced in trademark law, rather than a bankruptcy judge to handle these matters." 160 B.R. at 505-07. The court also transferred the proceeding from the bankruptcy court to the District Court for the Central District of California. *Id.* The Court should do the same here.

*Second,* because the resolution of the Adversary Proceeding depends most prominently on substantial issues of non-bankruptcy law, its withdrawal from the bankruptcy court should not affect the uniformity of bankruptcy administration. *See, e.g., In re McMahon*, 222 B.R. 205, 208 (S.D.N.Y. 1998) ("[U]niformity in the administration of bankruptcy law will not be [a]ffected as the breach of contract claim does not turn on questions of bankruptcy law").

*Third*, withdrawal of the reference would avoid forum shopping (or the appearance thereof). Because this action arises from and relates to the California Judgment and Award, the California District Court is the forum most suited to resolve this dispute. Plaintiffs' attempt to avoid that forum in favor of the Bankruptcy Court, which has no familiarity with the dispute but which Plaintiffs (who, again, admit that the "substantial weight of authority" cuts against their position) no doubt believe will favor the assignability of their trademark license, creates at least the appearance of forum shopping. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (stating that the more a plaintiff's choice of forum is motivated by forum-shopping, "the less deference the plaintiff's choice commands").

## II.   The Court Should Transfer the Adversary Proceeding to the California District Court

In conjunction with withdrawal of the reference, the Court should transfer the Adversary Proceeding to the California District Court.  *See* 28 U.S.C. § 1412 ("A district court may transfer

a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."). Because the criteria under § 1412 are "phrased in the disjunctive, . . . either the interest of justice or . . . the convenience of the parties" will support a transfer. *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 434 (Bankr. N.D. Ala. 2000); *accord In re Rohalmin*, 598 B.R. 900, 905 (Bankr. S.D. Fla. 2019). Both bases support transfer here.

As discussed above, the court that is best suited to address issues relating to the California Judgment and Award, and to adjudicate the novel trademark issues arising out of the California Judgment and Award, is the court that issued the California Judgment—i.e., Judge Fischer in the California District Court. Indeed, Judge Fischer is already familiar with the substantive issues underlying this action and has jurisdiction to enforce the California Judgment and Award. *See IBP*, 132 F. App'x at 737.

Under such circumstances, as numerous courts have held, "the interest of justice" and "the convenience of the parties" overwhelmingly favor transfer. *See, e.g.*, *UMB Bank*, 2019 WL 9049056, at *2 ("[T]he single most significant circumstance favoring transfer . . . is the existence of a related action in another district."); *Plotkin v. United States*, 2011 WL 1103469, at *4 ("jurisdiction . . . should be returned to the [original court] —the court best suited to interpret and apply the judgment"); *The Dispatch Printing Co. v. Zuckerman*, 2016 WL 335753, at *2-3 (S.D. Fla. Jan. 27, 2016) (transferring discovery dispute to the Southern District of Ohio, the forum court for the underlying litigation, because the length and complexity of the Ohio proceedings required a decisionmaker "familiar[] with the full scope of the issues involved"); *J & K Adrian Bakery, LLC v. Dayton Superior Corp.*, 2012 WL 3542206, at *5 (N.D. Ala. Aug. 13, 2012) ("[T]he interest of justice requires allowing the [original court] to interpret its own Confirmation Order."); *Watermark Condo. Residences Ass'n v. WCI Cmtys., Inc.*, 2013 WL 2404221, at *3, 2013 U.S.

Dist. LEXIS 75842, at *12-14 (D.N.J. May 30, 2013) ("Simply put, the critical concerns of judicial economy and the consistency of judgments, in addition to logic and commonsense, dictate that the court most familiar with the factual and legal issues presented by this case -- indeed, the court whose very orders may prove dispositive -- consider it in the first instance."); *Burns v. Grupo Mex. S.A. de C.V.*, 2007 WL 4046762, at *6, 2007 U.S. Dist. LEXIS 84514, at *16 (S.D.N.Y. Nov. 16, 2007) (transferring bankruptcy-related case where the transferee court "ha[d] already spent significant time" on nearly identical issues); *Dahl v. HEM Pharm. Corp.*, 867 F. Supp. 194, 197 (S.D.N.Y. 1994) ("[I]t would be a patent misuse of judicial resources" to require another court "to review and become familiar with facts and circumstances already extensively excavated by another Federal District Court."). The District Court's comparative expertise in trademark law underscores the need for transfer. *See In re McCrory Corp.*, 160 B.R. at 506-07 (transferring adversary proceeding from New York to the Central District of California court that handled a preexisting trademark suit because: "[i]t is economically and administratively prudent for a district judge, experienced in trademark law, rather than a bankruptcy judge to handle these matters"); *see also In re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166, 1168 (11th Cir. 1985) ("[The court that] has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings."); *In re Managed Care*, 756 F.3d 1222, 1234 (11th Cir. 2014) ("The district court is in the best position to interpret its own orders.").

## S.D. FLA. LOCAL RULE 7.1 CERTIFICATION

Movants have conferred with both the Debtors and the Official Committee of Unsecured Creditors (a statutory representative of the Debtors' Estates) in a good faith effort to consensually resolve the issues raised in the motion. However, as of the date of this motion, the Debtors have advised the Movants that they oppose the relief requested by Movants and the Committee has yet to provide its legal position as to the relief requested in this Motion. Accordingly, Movants seek

69077668;2

that this Court adjudicate the relief requested in this Motion on an expedited basis for the reasons cited herein.

**WHEREFORE**, Monster Energy Company and Orange Bang, Inc. respectfully request that the Court enter an Order: (i) withdrawing the reference of the Adversary Proceeding to the United States Bankruptcy Court for the Southern District of Florida, (ii) transferring the Adversary Proceeding to the United States District Court for the Central District of California, and (iii) granting all other further relief as the Court may deem just and proper.

Dated:  March 7, 2023                    **AKERMAN LLP**

                                         */s/ Michael I. Goldberg*
                                         Michael I. Goldberg, Esq.
                                         Florida Bar No. 886602
                                         Eyal Berger, Esq.
                                         Florida Bar No. 11069
                                         201 East Las Olas Boulevard, Suite 1800
                                         Fort Lauderdale, FL 33301
                                         T: (954) 463-2700 /F: (954) 463-2224
                                         michael.goldberg@akerman.com
                                         eyal.berger@akerman.com

                                         -and-

69077668;2

**PACHULSKI STANG ZIEHL & JONES LLP**[7]
Richard M. Pachulski (pro hac vice)
Ira D. Kharasch (pro hac vice)
Robert J. Feinstein (pro hac vice)
Teddy M. Kapur (pro hac vice)
Steven W. Golden (pro hac vice)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
T: (310) 277-6910 /F: (310) 201-0760
rpachulski@pszjlaw.com
ikharasch@pszjlaw.com
rfeinstein@pszjlaw.com
tkapur@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to Monster Energy Company*

***AND***

**FENDER, BOLLING AND PAIVA, P.A.**

*/s/ G. Steven Fender*
G. Steven Fender, Esq.
Fla. Bar No. 060992
P.O. Box 1545
Ft. Lauderdale, FL 33302
T: (407) 810-2458
steven.fender@fender-law.com

-and-

---

[7] Michael I. Goldberg hereby certifies that the undersigned attorneys are appearing *pro hac vice* in this matter pursuant to court orders dated as follows: (i) Teddy M. Kapur, October 14, 2022 [ECF 103]; (ii) Robert J. Feinstein, October 17, 2022 [ECF 133]; (iii) Steven Golden, October 17, 2022 [ECF No. 134]; (iv) Richard M. Pachulski, October 18, 2022 [ECF 158] ; and (v) Ira D. Kharasch, October 18, 2022 [ECF 159].

69077668;2

**KTBS LAW LLP**[8]
Thomas E. Patterson, Esq. (pro hac vice)
Nir Maoz (pro hac vice)
1801 Century Park East
Twenty Sixth Floor
Los Angeles, CA 90067
T: (310) 407-4000
F: (310) 407-9090
tpatterson@ktbslaw.com
nmaoz@ktbslaw.com

*Counsel to Orange Bang, Inc.*

---

[8] G. Steven Fender hereby certifies that the undersigned attorneys are appearing pro hac vice in this matter pursuant to court orders dated as follows: (i) Thomas E. Patterson, November 8, 2022 [ECF 269]; (ii) Nir Maoz, November 8, 2022 [ECF 270].

69077668;2

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

*/s/ Michael I. Goldberg*

69077668;2

**<u>EXHIBIT A</u>**

**PROPOSED ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.

VITAL PHARMACEUTICALS, INC., and JHO
INTELLECTUAL PROPERTY HOLDINGS, LLC,

       Plaintiffs,                             Bankr. Adv. Pro. No. 23-01031 (PDR)

v.

ORANGE BANG, INC., and MONSTER ENERGY
COMPANY,

       Defendants.

_____/

**ORDER GRANTING JOINT MOTION OF MONSTER ENERGY COMPANY AND
ORANGE BANG, INC. FOR ENTRY OF AN ORDER PURSUANT TO 28 U.S.C. §§
157(D) AND 1412 AND BANKRUPTCY RULE 5011(A) WITHDRAWING THE
REFERENCE AND TRANSFERRING VENUE OF ADVERSARY PROCEEDING TO
<u>CENTRAL DISTRICT OF CALIFORNIA</u>**

      **THIS CAUSE** came before the Court upon the *Joint Motion of Monster Energy Company
and Orange Bang, Inc. for Entry of an Order Pursuant to 28 U.S.C. §§ 157(d) and 1412 and
Bankruptcy Rule 5011(a) Withdrawing the Reference and Transferring Venue of Adversary
Proceeding to Central District of California* (the "Motion") (ECF No. ___). The Court, having
reviewed the Motion and the full record in this case, does hereby **ORDER AND ADJUDGE** as
follows:

      1.     The Motion is **GRANTED**.

      2.     Pursuant to 28 U.S.C. § 157(d), the reference of the adversary proceeding pending
under Bankr. Adv. Pro. No. 23-01031 (PDR) to the bankruptcy judges of this district is
**WITHDRAWN**.

3.      Pursuant to 28 U.S.C. § 1412, the adversary proceeding pending under Bankr. Adv. Pro. No. 23-01031 (PDR) in the Southern District of Florida shall be **TRANSFERRED** to the United States District Court for the Central District of California, for adjudication in connection with the related case, *Vital Pharmaceuticals, Inc. v. Orange Bang, Inc.*, Case No. 5:20-cv-01464 (C.D. Cal.).

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida this ___ day of March, 2023.

_____
UNITED STATES DISTRICT COURT JUDGE

Cc: Counsel of record