UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |
| VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, | |
| Plaintiffs, | |
| v. | Adv. Pro. No.  23-01031 |
| ORANGE BANG, INC., and MONSTER ENERGY COMPANY, | |
| Defendants. | |
| _____/ | |

**PLAINTIFFS' OPPOSITION TO EMERGENCY JOINT MOTION OF MONSTER ENERGY COMPANY AND ORANGE BANG, INC. FOR STAY OF ADVERSARY PROCEEDING OR CONTINUANCE OF HEARING ON MOTION FOR SUMMARY JUDGMENT PENDING DECISION ON MOTION TO WITHDRAW REFERENCE AND TRANSFER**

Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC (collectively, "Plaintiffs"), each a Debtor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby submit this opposition to the *Emergency Joint Motion of Monster Energy Company and Orange Bang, Inc. for Stay of Adversary Proceeding or Continuance of Hearing on Motion for Summary Judgment Pending Decision on Motion to Withdraw Reference and Transfer* [Adv. Proc.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

12006319-1

No. 18] (the "Motion")[2] filed by Orange Bang, Inc. ("Orange Bang") and Monster Energy Company ("Monster") (collectively, "Defendants"). In support of this opposition, Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

1. Defendants seek a stay of this adversary proceeding pending resolution of their Motion to Withdraw Reference and Transfer or, in the alternative, to continue the agreed upon and schedule March 29, 2023 hearing on Plaintiffs' Summary Judgment Motion. However, applicable law is clear that a stay is an exceptional remedy, and is to be granted only where movants satisfy the traditional stay factors. Defendants have failed to do so here.

2. As an initial matter, Defendants are not likely to succeed on the merits (*i.e.*, obtain withdrawal) because resolution of this adversary proceeding does not require "significant interpretation" of federal trademark law. In fact, resolution of this case likely does not require *any* interpretation of federal trademark law.

- *First*, Plaintiffs assert first that the Continuing Fee Election under the Award will apply to any purchaser of the Debtors' business as a matter of *res judicata*, without any consideration of whether the Award has elements of a trademark license, or raises any issues of assignability under federal trademark law. If Plaintiffs and Defendants are bound by the Continuing Fee Election under the Award—which Defendants do not contest—so is a purchaser of Plaintiffs' business. Full stop, no trademark issues in sight.

- *Second*, Plaintiffs next assert that even if *res judicata* does not provide a complete answer (it does), neither the Continuing Fee Election nor the Award is a contract—whether a trademark license or otherwise. Instead, the Continuing Fee Election is property of the Debtors' estates: it is a right or option which, if exercised, permits the Debtors may make free use of their mark. Like any other estate property, it is subject to sale under section 363 of the Bankruptcy Code. Again, no trademark issue raised.

- *Third*, if this Court concludes the Continuing Fee Election is a contract (it is not), then it is not a trademark license. This argument raises a trademark issue for the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the *Motion for Summary Judgment and Incorporated Memorandum f Law* [Adv. Proc. Docket No. 2] (the "Summary Judgment Motion"), as applicable.

2

>first time, but a simple one: are the basic elements of a trademark license present (they are not).

- *Fourth*, if this Court concludes a trademark license exists, then, even so, the policies behind non-assignability are not present, and instead the bankruptcy policies promoting transferability prevail—which is an important issue of *bankruptcy* law.

3. This Court may well resolve all issues in the adversary proceeding without ever looking to trademark law, and certainly will never need to make "significant application" thereof in deciding the merits of Plaintiffs' claims.

4. Defendants also fail to satisfy the remaining stay factors. Defendants point to no irreparable harm that will befall them if a stay is not granted. They assert only that Plaintiffs are forum shopping. But Plaintiffs are trying to resolve an issue critical to their sale process and chapter 11 plan in the court overseeing the sale and adjudicating the plan. Defendants are trying to move this dispute to a distant court whose familiarity with the substance of the dispute is limited, in order to cause delay and exert leverage. *That* is forum shopping.

5. Plaintiffs and the other Debtors, on the other hand, will suffer irreparable harm if their adversary proceeding is stayed pending resolution of a motion to withdraw the reference, venue transfer, and then, one day, adjudication of the merits of their Summary Judgment Motion. There is no realistic possibility that those steps will be accomplished in time to permit the Debtors to conduct a value-maximizing sale and exit bankruptcy before their DIP funding expires.

6. Finally, the public interest—in fact, the very factors that Defendants cite—weighs *against* granting a stay. Keeping the adversary proceeding before this Court, rather than attempting to withdraw it to another court, only to transfer it to a third, will "deter piecemeal litigation, prevent inconsistent rulings, and conserve judicial resources." *See* Motion at 10. Accordingly, this Court should deny Defendants' Motion.

**ARGUMENT**

**I.     REQUEST FOR A STAY SHOULD BE DENIED**

7.     This Court should deny Defendants' request for a stay pending the District Court's ruling on their Motion to Withdraw Reference and Transfer. By its terms, under Rule 5011(c) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the "granting of a stay should be the exception—not the general rule." *In re The Antioch Co.*, 435 B.R. 493, 496 (Bankr. S.D. Ohio 2010); *NBV Loan Acquisition, LLC v. Lexi Dev. Co., Inc.*, No. 19-20188, 2019 WL 266404, at 1 (S.D. Fla. Jan. 18, 2019) (stating that "Bankruptcy Rule 5011(c) provides explicitly that proceedings are not stayed merely by filing a motion to withdraw the reference"); *Sec. & Exch. Comm'n v. Pension Fund of Am., L.C.*, No. 05-20863-CIV, 2005 WL 8156247, at 2 (S.D. Fla. Nov. 7, 2005) (same). Defendants, as movants, bear the burden of proof in establishing that a stay is proper. *See id.* (stating that "[p]ursuant to Rule 5011, the moving party bears the burden of proof in demonstrating to this Court that a stay of these proceedings pending a determination of the Motion to Withdraw the Reference would be proper"); *NBV Loan Acquisition, LLC,* No. 19-20188, 2019 WL 266404, at 1 (same).

8.     A motion seeking to stay bankruptcy proceedings pending resolution on a motion to withdraw the reference is the same as any other stay motion. *See Sec. & Exch. Comm'n*, No. 05-20863-CIV, 2005 WL 8156247, at 2 (stating that the "substance of the Motion for a stay pending decision on a motion for withdrawal of reference follows the same standards as any motion for stay"). In other words, Defendants must satisfy the standard stay factors, which include: (a) the likelihood the movants will prevailing on the merits of the pending motion; (b) whether the movant will suffer irreparable harm if the stay is denied; (c) the potential harm to the opposing party if the stay is issued; and (d) whether the public interest will be served by granting the stay. *See In re Woide*, 730 F. App'x 731, 737 (11th Cir. 2018) (stating the four factors); *Garcia-Mir v.*

*Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (same); *Sec. & Exch. Comm'n*, No. 05-20863-CIV, 2005 WL 8156247, at 2.

9. Defendants do not begin to carry their burden in this case and each of the relevant factors weighs in favor of denying the Motion.

### A. Defendants' Likelihood of Success on the Merits on Their Mandatory Withdrawal Contention

10. In support of their assertion that they are likely to succeed on the merits, Defendants rely solely on their argument that resolution of this adversary proceeding may involve consideration of federal trademark law. However, the standard for withdrawal is not that non-bankruptcy law may be relevant, it is that rendering a decision "will necessitate significant interpretation of [non-bankruptcy law], rather than a mere application." *Stower v. Cornide*, No. 23-CV-20143, 2023 WL 1100454, at *4 (S.D. Fla. Jan. 30, 2023) (rejecting withdrawal request); *In re Tousa, Inc.*, *No*. 1060206-MC, 2010 WL 1644456, at *2–3 (S.D. Fla. Apr. 19, 2010) (noting that the majority of courts require more than merely pleading non-bankruptcy related claims); *In re Am. Body Armor & Equip., Inc.*, 155 B.R. 588, 590 (M.D. Fla. 1993) (finding that "the law requires more than simply non-bankruptcy code issues before requiring mandatory withdrawal").[3]

---

[3] Defendants' authorities require the same, if not a more stringent showing, namely that the Court will be required to give substantial and material consideration to non-bankruptcy law *and* that such consideration of non-bankruptcy law is necessary to resolve the claims at issue. *See e.g.*, *In re McCrory Corp.*, 160 B.R. 502, 505 (S.D.N.Y. 1993) (stating that "mandatory withdrawal is required for cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes" and holding that this requires a showing that consideration of non-bankruptcy law is "necessary for the resolution of the proceeding") (internal quotes and citations omitted); *In re Singer Co., N.V.*, No. 01 CIV. 0165 (WHP), 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002) (quoting standard in *In re McCrory*); *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (stating that "[b]efore withdrawing the reference, the district court must make an 'affirmative determination' that the relevant non-code legal issues will require substantial and material consideration, and the court must be satisfied that consideration of these federal laws requires 'significant interpretation' on the part of the court" and that "withdrawal of reference is not warranted, however, where it is a question of straightforward application of a federal statute to a particular set of facts.") (internal quotes and citations omitted); *In re Electro-Mech. Indus., Inc.*, No. 07-36393, 2018 WL 6587299, at *4 (Bankr. S.D. Tex. Feb. 20, 2018) (quoting standard in *In re National Gypsum*); *Eli Glob., LLC v. Univ. Directories, LLC*, 532 B.R. 249, 252 (M.D.N.C. 2015) (stating that mandatory withdrawal is appropriate because the case involved "significant consideration of non-Title 11 federal law").

Nothing in this adversary proceeding or Plaintiffs' Summary Judgment Motion requires significant interpretation of trademark law—or even *any* interpretation of trademark law.

11. *First*, Plaintiffs' Summary Judgment Motion argues that the Continuing Fee Election under the Award confirmed by the California District Court will apply to any purchaser of the Debtors' business as a matter of *res judicata*, regardless of whether the Award or Continuing Fee Election created a trademark license. Any future claim that a *purchaser's* use of the Debtors' Bang Mark infringes on Orange Bang's mark will be the exact same claim addressed in the Award, and will be asserted against a party—the purchaser—in privity with Debtors. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F. 4th 1079, 1083 (11th Cir. 2022) ("A claim is barred by res judicata, i.e., claim preclusion, when (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.") (citations omitted). That claim was resolved, and remains resolved, by the Continuing Fee Election.

12. *Second,* if the foregoing does not fully resolve the Adversary Proceeding (which it does), Plaintiffs next assert that neither the Continuing Fee Election nor the Award is a contract at all, whether a trademark license or otherwise. *See In re Bennet Enters., Inc.*, 628 B.R. 481, 487 (Bankr. D.N.J. 2021) ("Courts agree that the phrase 'executory contract' cannot be applied to a judicial order.") (internal quotes omitted); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (stating that "confirmation of an arbitration award . . . merely makes what is already a final arbitration award a judgment of the court"). Instead, the Continuing Fee Election is a right or option that attaches to the Debtors' use of their own mark—specifically, the Debtors may use that mark freely without risk of attack from Orange Bang provided the Debtors pay the

Continuing Fee. This right is estate property and is subject to sale like any other estate property pursuant to section 363(b).

13. If this Court agrees with either of the foregoing propositions (*i.e.*, *res judicata* governs, or there is no contract), there will be *no* examination of federal trademark law and no colorable basis to withdraw the reference. *See Drs. Assocs., Inc. v. Desai*, No. CIV.A.10-575, 2010 WL 3326726, at *5 (D.N.J. Aug. 23, 2010) (holding that simply construing an arbitration award that itself implicated trademark law did not require substantial and material application of the Lanham Act and did not necessitate withdrawal of the reference).

14. *Third*, Plaintiffs assert in the alternative that if the Award or Continuing Fee Election is a contract, it is not a trademark license. This argument, if reached, implicates non-controversial application of federal trademark law, namely, analyzing whether the fundamental elements of a trademark license are present, or not. Among other things, quality control provisions are fundamental to a trademark license, and a failure to provide for such control creates a "naked license" that may result in the owner's deemed abandonment of the mark. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013); *see also FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010) ("Naked licensing occurs when the licensor fails to exercise adequate quality control over the licensee."). There are no quality control provisions in the Award—because the Continuing Fee Election is not a license of the Orange Bang mark at all. This is not a deep dive into the Lanham Act.[4]

---

[4] Defendants authorities (to the extent relevant) demonstrate just how complicated the issues must be before the court determines withdrawal is necessary. Setting aside cases that were entirely vacated (*Eli Glob., LLC*) or in which the parties to the litigation agreed withdrawal was proper (*In re Electro-Mech. Indus.*), Defendants cite exclusively to cases in which the bankruptcy court was being asked to rule on the core issue of whether infringement had occurred—and in particularly nuanced and factually specific scenarios. *See e.g.*, *In re McCrory Corp.*, 160 B.R. 506 (finding mandatory withdrawal appropriate because "the bankruptcy court would have to determine, among others, the relative rights of [competitors] to various marks under trademark law, whether these marks are protectable under the Lanham Act, and if so, to what degree protection is needed. Moreover, the bankruptcy court would be required to rule on whether the use of similar marks by McCrory creates a likelihood of confusion and constitutes unfair competition. Such an analysis clearly necessitates significant consideration of federal trademark law."); *In re Singer Co.*, N.V., No. 01 CIV. 0165 (WHP), 2002 WL 243779, at *3 (finding mandatory withdrawal

7

15. *Finally*, Plaintiffs assert that if a trademark license exists as a result of the Award or Continuing Fee Election, such license is nonetheless transferable under the circumstances as a matter of *bankruptcy* law. It is bankruptcy law that requires a court to examine not only prohibitions on assignment in applicable law, but also their purposes. "[I]n determining whether an 'applicable law' stands or falls under § 365(f)(1), a court must ask why the 'applicable law' prohibits assignment." *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 123 (Bankr. D. Del. 2015). While a bankruptcy court will then need to understand the policy behind non-bankruptcy law, the ultimate question is the persuasiveness of that policy in light of the facts and circumstances of the particular bankruptcy case. *See id.* at 123-25 (bankruptcy court analyzing applicability of default rule of non-assignability of trademark to contract with debtor licensee). Here, Plaintiffs concede the only relevant aspect of trademark law—*i.e.*, that there is a default rule against assignment—but assert that the purposes behind that default rule have no applicability where Defendants have not bargained for *any* control over the identity of the "licensee" or its activities in respect of the marks, so long as the 5% fee is paid.

16. In sum, it is highly unlikely this Court is required to interpret federal trademark law, and even if it does, the decision from this Court does not require "substantial and material consideration" of federal trademark law. Defendants' mere conclusory remarks noting cases where intellectual property disputes resulted in the withdrawal of the reference do not carry the day.

17. Based on the foregoing, withdrawal is not mandatory.[5]

---

appropriate where the claims at issue raised difficult patent law questions, including, "determining under what circumstances an implied patent license can arise," and "whether an accused product infringes a patent" which "requires significant and material consideration of patent law"). In *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) the parties *agreed* that "the issues in the patent infringement litigation are 'complex'" and that *coupled with consideration of antitrust issues*, the court would be required to give "substantial consideration of non-Code federal law".

[5] Defendants do not assert that they are likely to prevail on the Motion to Withdraw Reference and Transfer under permissive withdrawal. Such an argument would also fail for the reasons stated above. Defendants also cannot

12006319-1

B. **Irreparable Harm to Defendants**

18. In order to satisfy the second prong, Defendants must show something more than a mere possibility of irreparable harm. *See Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 1753, 173 L. Ed. 2d 550 (2009) (stating that "simply showing some possibility of irreparable injury fails to satisfy the second factor" in connection with analyzing whether a stay was appropriate); *In re Freedom Unlimited*, 489 F. Supp. 3d 1328, 1338 (S.D. Fla. 2020) (stating that "[n]otably, a showing of some possible irreparable injury is insufficient; instead, a litigant must show a substantial likelihood that it will be injured 'absent a stay.'"); *In re Subpoena of S. Broward Hosp. Dist.*, No. 21-62550-MC, 2022 WL 17583433, at 3 (S.D. Fla. Feb. 18, 2022) (quoting *Freedom Unlimited*).

19. Defendants, in one sentence, assert that they will suffer irreparable harm if the Motion is denied, because denial will somehow permit forum shopping away from the California District Court. Plaintiffs are not forum shopping by bringing an adversary proceeding in this Court. Plaintiffs filed this action in this Court because they are debtors in this Court and need to obtain certainty regarding a sale process overseen by this Court in order to confirm a plan adjudicated by this Court. More importantly, there is no prejudice to Defendants in continuing the litigation in this Court. Defendants are actively involved in the Debtors' bankruptcy, have retained able counsel, and have not put forth any evidence of harm, not to mention irreparable harm, let alone "substantial likelihood" of such harm, that would result from the continuation of the adversary proceeding in this forum. In fact, Defendants will continue to receive the benefit of the decision in the underlying litigation, the Continuing Fee Election, throughout the duration of these

---

show the likelihood of success on an entirely discretionary standard, and, moreover, the general practice in this district is that all pretrial matters should be handled by the bankruptcy court in cases of discretionary withdrawal. In other words, this Court would in all likelihood hear the Summary Judgment Motion that the Defendants are desperate to remove from this Court regardless of whether permissive withdrawal is appropriate.

12006319-1

chapter 11 cases from the Debtors and from any purchaser of the Debtors' assets post-closing of any sale.

20. To the extent that Defendants instead intend to make an equitable argument, the truth is that *Defendants* are forum shopping. The California District Court has no substantive familiarity with the Award or any of the relevant issues. That court's only review was confirming the Award under the governing, "limited and highly-deferential" standard focused on whether the Award was "'completely irrational' or constitutes manifest disregard of the law." *See Vital Pharms., Inc. and JHO Intellectual Prop. Holdings, LLC v. Orange Bang, Inc. and Monster Energy Co.,* No. 5:20-cv-1464 [Docket No. 92] (the California District Court's *Order Denying Motion to Vacate Arbitration Award; Order Granting Motion to Confirm Arbitration Award*, stating that "[t]he 'completely irrational' standard is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement") (citations omitted). The only reason to request transfer now to the California District Court is to occasion delay and seek leverage. In other words, Defendants prefer the California District Court because it is not this Court. *That* is forum shopping and should not be countenanced.

C. **Substantial Harm to Plaintiffs**

21. Unlike Defendants, Plaintiffs (and the Debtors' estates and all of their stakeholders) will suffer irreparable harm if the stay is granted. The entire purpose behind this adversary proceeding is gaining certainty, as expeditiously as possible, on the application of the Continuing Fee Election under the Award to a purchaser of the Debtors' business. Without that certainty, or with any delay in getting the same, potential bidders may decide not to bid, or may reduce their bids, or make their bids contingent. And any material contingency relating to these matters in any stalking horse bid would render that bid incapable of satisfying the requirements for a qualifying stalking horse bid under the DIP facility, which includes milestones relating to same. In short, granting a stay casts meaningful doubt on the Debtors' ability to conclude a sale, and to bring these

12006319-1

cases to a successful conclusion for all stakeholders, including Defendants. Time is of the essence. As such, this factor strongly weighs in favor of denying the Motion.

### D. Public Interest

22. The public interest will not be better served by granting the Motion. In the context of a bankruptcy proceeding "'there is a great public policy in ensuring that this bankruptcy case continue to an orderly, efficient resolution to maximize and preserve the estate's assets.'" *In re Lickman*, 301 B.R. 739, 749 (Bankr. M.D. Fla. 2003) (internal citations omitted); *In re F.G. Metals, Inc.*, 390 B.R. 467, 478 (Bankr. M.D. Fla. 2008). Contrary to the assertions made by Defendants, by granting the Motion, the Debtors' entire sale process—and so the entirety of these chapter 11 cases—will be put on hold. The Debtors will be unable to move forward until multiple new and unnecessary litigations are resolved: litigation over withdrawal, litigation over venue transfer, and litigation of the summary judgment motion itself in front of a court that is arguably *less* familiar with the relevant issues than this Court. Nothing about that process is "orderly" or "efficient" or likely to "maximize and preserve the estate's assets." Accordingly, to the extent the public interest is implicated in this case, this factor weighs in favor of denying the Motion.

## II.   REQUEST FOR CONTINUATION SHOULD BE DENIED

23. Defendants argue that if this Court is not inclined to grant a stay it should continue the hearing on Plaintiffs' Summary Judgment Motion. Such relief would be little more than a stay with extra benefits to Defendants. Plaintiffs have already agreed to a reasonable briefing schedule that provides Defendants with thirty (30) days to respond to the complaint, while shortening Plaintiffs' own reply time to five (5) days. If this Court were to continue the hearing, then the Court would be giving Defendants the benefits of a stay while retaining the requirement that Plaintiffs reply on short time, plus granting an indefinite opportunity for Defendants to consider and prepare in light of that reply. Continuation is thus even less appropriate than a stay.

### III. CONCLUSION

24. For all the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion.

Dated: March 17, 2023
      Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
      tj.li@lw.com
      brian.rosen@lw.com
      jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
      mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

*Co-Counsel for the Debtors/Plaintiffs*

12006319-1