UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] / | (Jointly Administered) |
| VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 23-01031 |
| ORANGE BANG, INC., and MONSTER ENERGY COMPANY, | |
| Defendants. / | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE OF ADVERSARY PROCEEDING**

Pursuant to Rule 5011-1 of the Local Rules of the Bankruptcy Court for the Southern District of Florida,[2] Vital Pharmaceuticals, Inc. ("VPX") and JHO Real Estate Investment, LLC ("JHO" and, together with VPX, "Plaintiffs"), each a Debtor in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby oppose the *Joint Motion of Monster Energy Company and Orange Bang, Inc. for Entry of an Order Pursuant to 28 U.S.C. §§ 157(d) and 1412 and*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] In accordance with Local Rule 5011-1, the Debtors are filing this response with the Bankruptcy Court with the understanding that it will be transmitted to and considered by the District Court (hereinafter, the "Court").

12016291-1

*Bankruptcy Rule 5011(a) Withdrawing the Reference and Transferring Venue of Adversary Proceeding to Central District of California* [ECF No. 17] (the "Motion") filed by Orange Bang, Inc. ("Orange Bang") and Monster Energy Company ("Monster") (collectively, "Defendants"). In support of this response in opposition, Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors' ability to maximize the value of their estates for the benefit of all creditors and stakeholders depends on their ability to successfully and expeditiously conduct a sale process for substantially all of the estates' assets. Accordingly, Plaintiffs proactively commenced this adversary proceeding in an effort to promptly gain certainty on the application of the Continuing Fee Election under the Award to a purchaser of the Debtors' business.[3] Any delay in obtaining that certainty compromises the Debtors' ability to conclude a sale, and to bring the Chapter 11 Cases to a successful conclusion for all stakeholders, including Defendants. Time is unquestionably of the essence.

2. Nevertheless, Defendants seek to delay the process by moving the adversary proceeding, through a combination of withdrawing the reference and transferring venue, to a forum with limited familiarity of the facts and issues and no familiarity with the Chapter 11 Cases. Their request should be denied.

3. Defendants argue that withdrawal of the reference is mandatory. But resolution of the adversary proceeding does not require "significant interpretation" of non-bankruptcy federal law:

- *First*, the Continuing Fee Election under the Award applies to any purchaser of the Debtors' business as a matter of *res judicata*, without any consideration of whether the Award has elements of a trademark license, or raises any issues of assignability

---

[3] The Debtors note that Defendants had indicated their intention to bring an adversary proceeding addressing the same disputed issues at an even later time.

- under federal trademark law. If Plaintiffs and Defendants are bound by the Continuing Fee Election under the Award—which Defendants do not contest—so would be a purchaser of Plaintiffs' business. Full stop, no trademark issues in sight. Only a simple application of the *res judicata* doctrine is necessary to fully resolve the issue.

- *Second*, even beyond application of *res judicata* principles, neither the Continuing Fee Election nor the Award is a contract—whether a trademark license or otherwise. Instead, the Continuing Fee Election is property of the Debtors' estates: it is a right or option that, if exercised, permits the Debtors to freely use their mark. Like any other estate property, it is subject to sale under section 363 of the Bankruptcy Code. At most, such analysis requires a determination of Plaintiffs' property interests under *state* law.

- *Third*, if this Court concludes the Continuing Fee Election is a contract (it is not), then it is still <u>not</u> a trademark license. This issue doesn't require a significant interpretation of trademark law, but only requires consideration of whether the basic elements of a trademark license are present (they are not).

- *Fourth*, even in the event the Court determines a trademark license exists, then the principle issue to be decided is whether bankruptcy policies promoting transferability prevail—which is an important issue of *bankruptcy* law.

4. Thus, the Bankruptcy Court may well resolve all issues in the adversary proceeding without ever looking to substantive issues of federal trademark law, and the Bankruptcy Court certainly will never need to make "significant application" thereof in deciding the merits of Plaintiffs' claims.

5. Defendants arguments that the Court should nevertheless exercise its discretion to withdraw the reference and/or transfer venue to the Central District of California are no more convincing, and fundamentally rely on two specious premises. The first is that difficult questions of federal trademark law predominate. As just explained, the adversary proceeding can, and likely will, be resolved without substantive issues of trademark law ever being considered. And to the extent the Court does look to any aspects of trademark law, it need not do anything more than straightforwardly applying well-settled principles.

3

12016291-1

6.      The second false premise is that the District Court for the Central District of California (the "California District Court") should resolve the adversary proceeding because of its familiarity with the facts and laws at issue. This is just wrong. The California District Court did nothing more than, by its own admission, review the Award under a "limited and highly deferential" standard to make sure that it was not "completely irrational" and did not "constitute[] manifest disregard of the law." Morris Decl. Ex 5 ("Order Confirming Award"). What is more, Defendants concede that the adversary proceeding gives rise to substantial and material bankruptcy law issues. This hardly amounts to the level of familiarity suggested by Defendants, and certainly fails to warrant packing up and shipping the proceeding almost 3,000 miles away from the forum of the Chapter 11 Cases.

7.      Keeping the adversary proceeding before the Bankruptcy Court, rather than attempting to withdraw it to another court, only to transfer it to a third court on the opposite side of the country, will deter piecemeal litigation, prevent inconsistent rulings, and conserve judicial resources. Accordingly, this Court should deny Defendants' Motion.

## BACKGROUND

8.      The factual background related to the adversary proceeding, is set forth in detail in the *Motion for Summary Judgment and Incorporated Memorandum of Law* [Adv. Proc. Docket No. 2] (the "Summary Judgment Motion"), which is fully incorporated herein by reference.[4]

9.      Defendants, while citing to the Summary Judgment Motion and other of Plaintiffs' pleadings, misstate and/or mischaracterize certain basic facts. Plaintiff JHO *does* own the Bang Mark, which is a federally registered trademark.[5] Nothing in the Award or trademark law prohibits

---

[4] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Summary Judgment Motion.

[5] *See* Registration Nos. 3545129, 5884629, and 6933743.

4

JHO from assigning its ownership of the Bang Mark to a buyer.  Accordingly, the question has never been whether Plaintiffs may use Orange Bang's mark, but whether Plaintiffs' use of *their own mark* had been carried out in an infringing manner.  The Arbitrator concluded the answer was *yes* and imposed a prospective remedy that required Plaintiffs either to sharply restrict the use of their own mark, or pay the Continuing Fee for freedom to use the mark more broadly.

10. Defendants also ignore the factual context underlying this entire dispute.  Plaintiffs and the other Debtors are in the midst of a process to sell the business under section 363 of the Bankruptcy Code.  The proceeds of that sale will fund recoveries to all stakeholders.  In order to achieve maximum value and the best outcome for all stakeholders, the Debtors and any purchaser need certainty regarding the transferability of the Continuing Fee Election—i.e., the option for a subsequent purchaser to use Debtors' Bang Mark freely in exchange for a quarterly payment of 5% of net sales.  And the Debtors require a prompt determination of this issue in order to close on the sale of their assets and move forward expeditiously with these Chapter 11 Cases before their debtor-in-possession financing is exhausted.  *See* Complaint ¶ 39.

## ARGUMENT

### I.    MANDATORY WITHDRAWAL OF THE REFERENCE IS NOT REQUIRED

11. Defendants seek mandatory withdrawal of the reference on the basis that resolution of the adversary proceeding may involve consideration of non-bankruptcy federal law.  But the standard for withdrawal is not that non-bankruptcy federal law may be relevant; instead it is that rendering a decision "will necessitate significant interpretation of [non-bankruptcy federal law], rather than a mere application." *Stower v. Cornide*, No. 23-CV-20143, 2023 WL 1100454, at *4 (S.D. Fla. Jan. 30, 2023) (rejecting withdrawal request); *In re Tousa, Inc.*, *No*. 1060206-MC, 2010 WL 1644456, at *2–3 (S.D. Fla. Apr. 19, 2010) (noting that the majority of courts require more than merely pleading non-bankruptcy related claims); *In re Am. Body Armor & Equip., Inc.*, 155

5

B.R. 588, 590 (M.D. Fla. 1993) (finding that "the law requires more than simply non-bankruptcy code issues before requiring mandatory withdrawal").[6] In other words, withdrawal is mandatory "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws, or when there is a conflict between the bankruptcy and other federal law." *BankUnited Fin. Corp. v. F.D.I.C.*, 436 B.R. 216, 220 (S.D. Fla. 2010).

### A. The Adversary Proceeding Can Be Resolved By Straightforward Application of Settled Law

12. Nothing in the adversary proceeding or Plaintiffs' Summary Judgment Motion requires significant interpretation of non-bankruptcy federal law. At most, the adversary proceeding can be resolved by little more than a straightforward application of well-established law.

13. ***First***, as argued in the Summary Judgment Motion, the Continuing Fee Election under the Award confirmed by the California District Court will apply to any purchaser of the Debtors' business, including the Bang Mark owned by and registered to JHO, as a matter of *res*

---

[6] Defendants' cited authorities require the same, if not a more stringent showing, namely that the Court will be required to give substantial and material consideration to non-bankruptcy law *and* that such consideration of non-bankruptcy law is necessary to resolve the claims at issue. *See e.g.*, *In re McCrory Corp.*, 160 B.R. 502, 505 (S.D.N.Y. 1993) (stating that "mandatory withdrawal is required for cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes" and holding that this requires a showing that consideration of non-bankruptcy law is "necessary for the resolution of the proceeding") (internal quotes and citations omitted); *In re Singer Co., N.V.*, No. 01 CIV. 0165 (WHP), 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002) (quoting standard in *In re McCrory*); *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992) (stating that "[b]efore withdrawing the reference, the district court must make an 'affirmative determination' that the relevant non-code legal issues will require substantial and material consideration, and the court must be satisfied that consideration of these federal laws requires 'significant interpretation' on the part of the court" and that "withdrawal of reference is not warranted, however, where it is a question of straightforward application of a federal statute to a particular set of facts.") (internal quotes and citations omitted); *In re Electro-Mech. Indus., Inc.*, No. 07-36393, 2018 WL 6587299, at *4 (Bankr. S.D. Tex. Feb. 20, 2018) (quoting standard in *In re Nat'l Gypsum*); *Eli Glob., LLC v. Univ. Directories, LLC*, 532 B.R. 249, 252 (M.D.N.C. 2015) (stating that mandatory withdrawal was appropriate because the case involved "significant consideration of non-Title 11 federal law").

*judicata*.[7]  Any future claim that a *purchaser's* use of the Debtors' Bang Mark infringes on Orange Bang's mark will be the exact same claim addressed in the Award, and will be asserted against a party—the purchaser—in privity with Debtors.  *See, e.g.*, *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F. 4th 1079, 1083 (11th Cir. 2022) ("A claim is barred by res judicata, i.e., claim preclusion, when (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases.") (citations omitted).  That claim was resolved by the Continuing Fee Election.

14. **Second**, even beyond principles of *res judicata*, neither the Continuing Fee Election nor the Award is a contract at all, whether a trademark license or otherwise.  *See In re Bennet Enters., Inc.*, 628 B.R. 481, 487 (Bankr. D.N.J. 2021) ("Courts agree that the phrase 'executory contract' cannot be applied to a judicial order.") (internal quotes omitted); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (stating that "confirmation of an arbitration award . . . merely makes what is already a final arbitration award a judgment of the court").  Instead, the Continuing Fee Election is a right or option that attaches to the Debtors' use of their own mark—specifically, the Debtors may use that mark freely without risk of attack from Orange Bang, provided that the Continuing Fee is paid.  This right is estate property and is subject to sale like any other estate property pursuant to section 363(b).

15. If the Bankruptcy Court agrees with either of the foregoing propositions (*i.e.*, *res judicata* governs, or there is no contract), then there will be no need to examine non-bankruptcy law beyond mere application of settled law, and thus no colorable basis to withdraw the reference.

---

[7] It is black letter law that JHO, as the registered owner, can assign its Bang Mark in its sole discretion.  *See, e.g.*, *In re Roman Cleanse Co.*, 43 B.R. 940, 947 (Bankr. E.D. Mich. 1984) ("A trustee in bankruptcy may assign a trademark.").

12016291-1

*See Drs. Assocs., Inc. v. Desai*, No. CIV.A.10-575, 2010 WL 3326726, at *5 (D.N.J. Aug. 23, 2010) (holding that simply construing an arbitration award that itself implicated trademark law did not require substantial and material application of the Lanham Act and did not necessitate withdrawal of the reference).

16. **_Third_**, in the alternative, if the Award or Continuing Fee Election is viewed as a contract, it is not a trademark license. This argument, if reached, implicates non-controversial application of federal trademark law, namely, analyzing whether the fundamental elements of a trademark license are present, or not. Among other things, quality control provisions are fundamental to a trademark license, and a failure to provide for such control creates a "naked license" that may result in the owner's deemed abandonment of the mark. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013); *see also FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010) ("Naked licensing occurs when the licensor fails to exercise adequate quality control over the licensee."). There are no quality control provisions in the Award—because the Continuing Fee Election is not a license of the Orange Bang mark at all. Resolution of this issue does not require a deep dive into the Lanham Act.[8]

---

[8] Defendants' cited authorities (to the extent relevant) demonstrate just how complicated the issues must be before the court determines withdrawal is necessary. Setting aside cases that were entirely vacated (*Eli Glob., LLC*) or in which the parties to the litigation agreed withdrawal was proper (*In re Electro-Mech. Indus.*), Defendants cite exclusively to cases in which the bankruptcy court was being asked to rule on the core issue of whether infringement had occurred—and in particularly nuanced and factually specific scenarios. *See e.g.*, *In re McCrory Corp.*, 160 B.R. 506 (finding mandatory withdrawal appropriate because "the bankruptcy court would have to determine, among others, the relative rights of [competitors] to various marks under trademark law, whether these marks are protectable under the Lanham Act, and if so, to what degree protection is needed. Moreover, the bankruptcy court would be required to rule on whether the use of similar marks by McCrory creates a likelihood of confusion and constitutes unfair competition. Such an analysis clearly necessitates significant consideration of federal trademark law."); *In re Singer Co., N.V.*, 2002 WL 243779, at *3 (finding mandatory withdrawal appropriate where the claims at issue raised difficult patent law questions, including, "determining under what circumstances an implied patent license can arise," and "whether an accused product infringes a patent" which "requires significant and material consideration of patent law"). In *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992), the parties *agreed* that "the issues in the patent infringement litigation are 'complex'" and that *coupled with consideration of antitrust issues*, the court would be required to give "substantial consideration of non-Code federal law."

12016291-1

17. ***Finally***, if the Award or Continuing Fee Election were to be viewed as creating a trademark license, then Plaintiffs have argued that such license is nonetheless transferable as a matter of *bankruptcy* law. It is bankruptcy law that requires a court to examine not only prohibitions on assignment under applicable law, but also their purposes. "[I]n determining whether an 'applicable law' stands or falls under § 365(f)(1), a court must ask why the 'applicable law' prohibits assignment." *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 123 (Bankr. D. Del. 2015). Thus, the ultimate question is the persuasiveness of the policy of non-assignability of trademark licenses in light of the facts and circumstances of the particular bankruptcy case. *See id.* at 123-25 (bankruptcy court analyzing applicability of default rule of non-assignability of trademark to contract with debtor licensee). Here, Plaintiffs argument rests on the fact that the purposes behind that default rule against assignment have no applicability where Defendants have not bargained for *any* control over the identity of the "licensee" or its activities in respect of the marks, so long as the 5% fee is paid. This is an argument that the Bankruptcy Court is better positioned to address than the California District Court.

18. In sum, it is highly unlikely the Bankruptcy Court would ever be required to interpret federal trademark law, and even if it does look to trademark law in considering the issues raised in the adversary proceeding, the decision certainly does not require "substantial and material consideration" of federal trademark law.

**B. Defendants' Attempts to Insert Novelty and Complexity of Their Own Creation Should Be Disregarded**

19. In addition to presenting the incorrect standard under 28 U.S.C. § 157(a), Defendants present three primary arguments in support of mandatory withdrawal. None of their three arguments is convincing.

20. *First*, Defendants argue that the Award and the Judgment *are themselves* federal law that must be interpreted. Motion 12-13.

21. Even if interpretation of the Award were necessary (it is not),[9] Defendants do not (and cannot) cite authority for the proposition that withdrawal is mandatory where a bankruptcy court must determine how rights arising from a judgment or arbitration award should be treated under the Bankruptcy Code. In fact, the case law plainly shows that withdrawal is not mandatory in such instances. *See Drs. Assocs., Inc. v. Desai*, No. CIV.A.10-575, 2010 WL 3326726, at *5 (D.N.J. Aug. 23, 2010) (holding that simply construing an arbitration award that itself implicated trademark law did not require substantial and material application of the Lanham Act and did not necessitate withdrawal of the reference).

22. *Second*, Defendants argue that there are novel issues of trademark law that must be addressed. Obj. 13-14. Again, whatever issues Defendants contend may be "novel" are not central to the issues that the Court is asked to decide in resolving the adversary proceeding. Indeed, adjudicating the claims asserted in the adversary proceeding involves a simple application of settled law to the facts presented here.

23. Defendants argue that they "have not found . . . a single case in which a court considered the assignability of a 'compulsory trademark license' in a court judgment." Obj. 14. This is true as far as it goes, which is not far enough. Defendants ignore that they failed to find any decisions considering this "novel" question of assignability because compulsory trademark licenses for future infringement are impermissible under federal trademark law. *See The Apollo*

---

[9] As discussed above, the adversary proceeding can be resolved by determining that, after JHO assigns its registered mark to a buyer, any future claim that a *purchaser's* use of the Plaintiffs' Bang Mark infringes on Orange Bang's mark will be the exact same claim addressed in the Award, and will be asserted against a party—the purchaser—in privity with Plaintiffs. Thus, the Bankruptcy Court simply needs to apply the doctrine of *res judicata*, as any interpretation of the Award itself requires little more than reviewing its plain meaning.

*Theater Foundation, Inc. v. Western Int'l Syndication*, No. 02-10037(DLC) 2005 WL 104114, at *14 (S.D.N.Y. May 5, 2005); *see also* McCarthy on Trademarks and Unfair Competition § 30:2 (5th ed.) ("A compulsory trademark license imposed by a court is not permitted by the GATT TRIPS international trade agreement."); North Atlantic Free Trade Agreement, art. 1708(11) ("the compulsory licensing of trademark shall not be permitted").  In other words, rather than being a new, complicated issue, this is a settled and straightforward issue: compulsory licenses are impermissible and thus, if the Continuing Fee Election is permissible, it cannot be a court-imposed license.

24.     The other federal trademark law questions Defendants identified likewise can be resolved by simple application of existing law.  Does "lack of 'quality control rights over Plaintiffs' use of the mark' . . . impact[] the assignability of Plaintiffs' rights to use the Bang Mark?"  Motion 13.  Federal trademark law is clear that it does, because it is "well settled" that a trademark license must have "retention of quality control [by the registered owner of the trademark] over [the debtor's] use of the mark." *In re Travelot Co.*, 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002).  So, again, if there is no trademark license, then there is no issue of assignability.

25.     *Finally*, and confusingly, Defendants argue that there are substantial and material questions of bankruptcy law.  Motion 14-16.  This is not a factor that weighs in favor of withdrawing the reference.  *BankUnited Fin. Corp. v. F.D.I.C.*, 436 B.R. at 220 (stating that withdrawal is mandatory "when complicated interpretive issues, often of first impression, have been raised under *non-Title 11* federal laws") (emphasis added).  In fact, the prevalence of substantial and material bankruptcy law issues cuts *against* withdrawing the reference because the Bankruptcy Court is best positioned to address such issues.  And, as further discussed below, the

prevalence of these issues weighs heavily against transferring venue to a court on the other side of the country from where the Chapter 11 Cases are proceeding.

26. Based on the foregoing, withdrawal is not mandatory.

## II. PERMISSIVE WITHDRAWAL JURISPRUDENCE IS NOT APPROPRIATE

27. In the Eleventh Circuit, "[o]nce a bankruptcy court has assumed jurisdiction . . . a district court may withdraw reference only "for cause shown." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991) (citations omitted). It is clear from the case law "that this is not an empty requirement." *Id.*; *In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000) (stating that "[a]lthough cause is not defined in the statute, this court has found that it is not an empty requirement"). "The determination of whether to grant a motion for permissive withdrawal is within the court's discretion." *Dunn, Tr. of Ests. of Pacifico Sur Grp., LLC v. Ricci*, No. 22-CV-21928, 2022 WL 3154187, at *1 (S.D. Fla. Aug. 8, 2022).

28. Factors courts look to in deciding whether permissive withdrawal is appropriate include: "(1) advancing uniformity in the administration of bankruptcy law; (2) prevention of forum shopping; (3) conservation of the parties' resources; and (4) facilitation of the bankruptcy process." *In re Tucker*, No. 11-33155-BKC-AJC, 2012 WL 4090677, at *4 (Bankr. S.D. Fla. Sept. 17, 2012). Additional factors include: (a) whether the claims are core or non-core; (b) efficiency of judicial resources; (c) whether a jury was demanded; and (d) preventing delay. *See id.*; *In re Simmons*, 200 F.3d at 741; *In re TOUSA, Inc.*, No. 08-10928-BKC-JKO, 2010 WL 11647659, at *3 (Bankr. S.D. Fla. Dec. 6, 2010).

29. Each of these factors weighs heavily against permissive withdrawal. Most critically, the uncertainty and unavoidable delays attendant to withdrawing the reference would undoubtedly be harmful to the Chapter 11 Cases, with the Debtors' creditors and stakeholders ultimately bearing the cost. The purpose of the adversary proceeding is to provide certainty, as

12

expeditiously as possible, on the application of the Continuing Fee Election under the Award to a purchaser of the Debtors' business. Without that certainty, or with any delay in obtaining that certainty, potential bidders may decide not to bid, or may reduce their bids, or make their bids contingent. And any material contingency relating to these matters in any stalking horse bid would render that bid incapable of satisfying the requirements for a qualifying stalking horse bid under the DIP facility, which includes milestones relating to same. Permissively withdrawing the reference would necessarily create more uncertainty, cause delays, and ultimately frustrate the Debtors' ability to resolve the issues on a timely basis at a moment when time is of the essence.

30. The other factors, too, weigh against permissive withdrawal. If their arguments are accepted, then Defendants, (a) litigating the adversary proceeding in the California District Court will lead to the inefficient use of estate resources, and the Defendants' own resources as they are already actively involved in these proceedings; (b) the bankruptcy process will not be facilitated, but hindered; (c) the Debtors' right to transfer estate property is a core bankruptcy matter; and (d) withdrawal will create judicial inefficiencies as the court-approved sale process will be dependent on another court's schedule and timing.

31. Overall, Defendants' arguments for permissive withdrawal are unconvincing. Defendants argue that the California District Court "is already familiar with the factual predicates of the Adversary Proceeding" and "is best suited to delineate the parties' rights under its own judgment." Motion 5. At best, this argument is extremely misleading, and ignores that the California District Court undertook a "limited and highly deferential" review of the Award to determine if it was "completely irrational" or "constituted manifest disregard of the law." Order Confirming Award at 1. Defendants offer no legitimate basis for how the California District Court

is "already familiar with the substantive issues underlying this action" other than the mere fact that the court affirmed the Award under a highly deferential standard.

32. Defendants also assert that resolution of the adversary proceeding depends most prominently on issues of non-bankruptcy law, and therefore permissive withdrawal will not affect the uniformity of bankruptcy administration. But Defendants concede that the adversary proceeding raises "substantial and material bankruptcy law issues," including issues under sections 363 and 365 of the Bankruptcy Code. Obj. 14-15. Clearly, then, withdrawing the reference and transferring venue *will* implicate the uniformity of bankruptcy administration.

33. Finally, Defendants argue that withdrawal of the reference would avoid forum shopping (or the appearance thereof) because the issues arise from and relate to the Judgment and Award. But, as addressed more fully below, it is *Defendants* who seek to forum shop. The Debtors filed for chapter 11 in the jurisdiction where their principal place of business is located. As with any chapter 11 case, "there is the public policy of centralizing bankruptcy proceedings, and there is a strong presumption in favor of maintaining the venue of an adversary proceeding where the bankruptcy is pending." *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 558 (Bankr. N.D. Ga. 2017). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Hechinger Inv. Co. of Del., Inc.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003) (denying venue transfer). Accordingly, Defendants' request to withdraw the reference only to then seek transfer to the California District Court, a forum with limited familiarity of the substantive issues at play, is a blatant attempt to forum shop and should not be permitted.

### III. VENUE TRANSFER IS INAPPROPRIATE

34. The Court has discretion to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. A court should "analyze each of the [following] factors and [] exercise its discretion to

14

transfer a proceeding cautiously":  (1) "[r]elative ease of access to sources of proof"; (2) "[a]vailability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining those witnesses' attendance"; (3) "[e]nforceability of a judgment if one is obtained"; (4) "relative advantages and obstacles to fair trial"; (5) "local interest in having local controversies decided at home," (6) [t]rial in the state the law of which will govern the action." *In re Pan Am Corp.*, 177 B.R. 1014, 1018 (Bankr. S.D. Fla. 1995).

35. "[T]he party requesting the transfer of venue must demonstrate by a preponderance of the evidence that in light of all of the factors to be considered, it will be more convenient for both parties and will further the interest of justice." *In re Rohalmin*, 598 B.R. 900, 906 (Bankr. S.D. Fla. 2019).  But, "there is a presumption that venue is most proper in the court in which [the] debtor's bankruptcy case is pending." *Id.*

36. Defendants have completely failed to articulate how *any* of the foregoing factors weigh in their favor.  Instead, they rely exclusively on their argument that the California District Court, which entered the Judgment is best-positioned to consider the issues raised in the adversary proceeding.  But, as discussed above, Defendants articulate no reasonable basis for how the California District Court, which merely affirmed the Award under a limited and highly deferential standard, is better positioned to adjudicate the issues in the adversary proceeding.  In fact, Defendants concede that resolution of the adversary proceeding requires substantial consideration of *bankruptcy*-related issues.  *See* Motion 14-16.  Unsurprisingly, Defendants fail to explain why the California District Court would be the best forum for those issues to be decided.

## CONCLUSION

37. For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order (a) denying in its entirety the relief requested in this Motion and (b) providing such other and further relief as may be just and proper.

12016291-1

Dated: March 22, 2023
Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
           mniles@bergersingerman.com

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
           hugh.murtagh@lw.com
           tj.li@lw.com
           brian.rosen@lw.com
           jon.weichselbaum@lw.com

- and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Plaintiffs*

16

12016291-1