UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE:<br><br>VITAL PHARMACEUTICALS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11 Case<br>Bankr. Case No. 22-17842 (PDR)<br>(Jointly Administered) |
| VITAL PHARMACEUTICALS, INC., and JHO INTELLECTUAL PROPERTY HOLDINGS, LLC,<br><br>Plaintiffs,<br>v.<br><br>ORANGE BANG, INC., and MONSTER ENERGY COMPANY,<br>Defendants. | Bankr. Adv. Pro. No 23-01031 (PDR) |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO WITHDRAW REFERENCE AND TRANSFER VENUE OF ADVERSARY PROCEEDING**

Monster Energy Company ("Monster") and Orange Bang, Inc. ("Orange Bang" and together with Monster, the "Movants" or "Defendants"), defendants in the above-captioned adversary proceeding (the "Adversary Proceeding") commenced by debtors and plaintiffs Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC ("Plaintiffs" and, together

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

with their affiliated debtors, the "Debtors"), reply as follows to *Plaintiffs' Response in Opposition to Motion to Withdraw Reference and Transfer Venue of Adversary Proceeding* [Adv. D.I. 39] (the "Opposition"), and respectfully represent:

## PRELIMINARY STATEMENT

The reference of this Adversary Proceeding to the Bankruptcy Court must be withdrawn if it involves a "substantial and material question of both title 11 and non-bankruptcy code federal law." *Astro Tel, Inc. v. Verizon Fla., LLC (In re Astro Tel, Inc.),* 2011 WL 4551571, 2011 U.S. Dist. LEXIS 114570, at *2 (M.D. Fla. Sept. 30, 2011) (withdrawing reference as to case involving Lanham Act, Sherman Act and RICO). There is no getting around the fact that the Judgment and Award created a trademark license (the Award expressly refers to the remedy provided as a "license" and to the payments thereunder as "royalties"). Trademark law is "non-bankruptcy code federal law" and it prohibits assignment of a license without the licensor's consent. Plaintiffs are asking the Bankruptcy Court to decide whether they may disregard that law and transfer their license rights under the Judgment to a third party, arguing that the remedy in the Award cannot be a license because if it were, it would be a "naked license" due to an alleged lack of quality control provisions. That alone is a substantial and material question of federal law. And it is a question that the California District Court has an interest in answering, having entered a Judgment confirming an Award in favor of Defendants on all claims, including damages of $175 million for trademark infringement and the license rights that are now at issue.

Plaintiffs fail to dent this straight-forward analysis. They cast the license rights as the "Continuing Fee Election," a "fee regime" or a "continuing fee," phrases that appear nowhere in the actual Award. They argue that the trademark issues are not substantial or material because the Bankruptcy Court will not need to consider them, but only by framing the issues in a manner that assumes their desired conclusion. For instance, they claim that res judicata eliminates the need to

2

consider trademark law because any purchaser will be in privity with Plaintiffs, thereby assuming their desired conclusion: that the license may be validly assigned in the first instance.  They also argue that the trademark license is simply property that may be sold in bankruptcy, but that argument even more clearly assumes its conclusion that trademark law permits the assignment of the trademark license.  They argue that the license lacks necessary elements as if such an issue could ever be insubstantial, which it cannot.  And they argue that bankruptcy pro-assignment policies trump trademark anti-assignment policies – but only the bankruptcy policies are important, which both assumes its conclusion and is conceptually impossible in any balancing of policies.

Defendants do not seek delay.  Indeed, as Plaintiffs note, Defendants have the greatest interest in the success of the sale process.  To minimize delay, Defendants completed their briefing on the SJ Motion notwithstanding having filed this Motion, and the matter will be fully briefed for whichever court is deemed proper.  Plaintiffs should not be rewarded, however, for having waited four months to commence this Adversary Proceeding, despite knowing from the start that Defendants would not consent to a transfer of license rights without their consent.  Matters concerning the interpretation and enforcement of the Judgment and Award should be heard in the California District Court that digested and put its imprimatur on a 177 page arbitration award.

## **MANDATORY WITHDRAWAL OF THE REFERENCE APPLIES**

Bankruptcy courts are not Article III courts, and the provision for withdrawal of the reference exists "to ensure that the judicial power of the United States is exercised by an Article III court."  *See In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 538 (11th Cir. 1991).  They "reflect Congressional 'intent to keep non-bankruptcy questions in district courts, which are more experienced at handling questions of non-bankruptcy federal law than the specialized bankruptcy courts.'" *Astro Tel, supra,* 2011 U.S. Dist. LEXIS 114570, at *4-5 (quoting *In re Contemporary Lithographers, Inc.*, 127 B.R. 122, 128 (M.D.N.C. 1991)).

It is virtually indisputable that the Adversary Proceeding involves substantial and material questions of trademark and bankruptcy law, and would require the Bankruptcy Court to rule on matters litigated in and decided in the California proceedings. Among many other issues, it involves whether the remedy cannot be a license (as Plaintiffs claim despite the Award's express use of that term) because it would be a "naked license" due to the alleged lack of quality control rights, whether the "licensee estoppel" doctrine applies, and the trademark law policy reasons behind the rule of non-assignability, all of which (a) involve very substantial issues of trademark law, and (b) would immerse the Bankruptcy Court deep into the facts and remedies arduously litigated and formulated in the California litigation.

As itemized in the Motion, these issues are raised in Plaintiffs' own papers:

- Whether the California Judgment and Award create a trademark license. SJ Motion, ¶¶ 21, 66.

- Whether the California Judgment, Award, and federal trademark law "prohibit[] Plaintiffs from transferring their rights [to use the Bang mark]." *Id.* ¶ 62.

- Whether a judicially imposed compulsory trademark license can be transferred or assigned under federal trademark law. *Id.* ¶¶ 66-69.

- Whether "the general policy reasons for prohibiting non-consensual assignment of trademark licenses" apply here. *Id.* at 26 & ¶¶ 74-77.

- Whether the Debtors' rights under the California Judgment and Award are property of the bankruptcy estate that may be sold under section 363 of the Bankruptcy Code or assigned without Movants' consent under section 365 of the Bankruptcy Code. *Id*. at 3.

Plaintiffs' arguments that the Adversary Proceeding does not involve substantial and material questions of trademark law are remarkably weak.

*First*, Plaintiffs submit that no consideration of trademark law will be required at all, because it will be decided on the basis of res judicata, regardless of whether the Judgment or Award created a trademark license. Opp. at 6-7. But as Defendants explain further in their Opposition to

4

Plaintiffs' SJ Motion, res judicata does not preclude Defendants from contesting any transfer of Plaintiffs' rights in the Bang Trademark *precisely because* the Judgment and Award created a license, which are not assignable as a matter of trademark law. (MSJ Opp. at 35-36.) Accordingly, disposing of Plaintiffs' contentions would necessarily require the Bankruptcy Court to interpret the Judgment and Award, as well as consider substantial issues of trademark law. The argument transparently assumes its conclusion – doing away with the issue that the binding Judgment created a trademark license, by definition requiring the application of trademark law to such license and its transferability.

*Second*, Plaintiffs argue that there is no need to examine trademark law because the trademark license cannot be an executory contract, and so assignability under section 365 will not be an issue (because the license was created by the Judgment and Award and not by contract). Opp. at 7. But Plaintiffs offer no authority whatsoever for their conclusion, and even the premise is incorrect, because the Award and Judgment actually incorporated an *agreement of the parties* on the terms of the license. *See, e.g., In re Columbia Gas Systems, Inc*., 50 F.3d 233, 237-38 (3d Cir. 1995) (explicitly overruling the bankruptcy court's determination that judicial orders cannot be considered contracts and analyzing a judicial order that incorporated a consensual agreement as a contract for purposes of section 365). Regardless, Plaintiffs again assume their conclusion, wishing away trademark law's restriction on assignment with the unfounded assumption that it does not apply if the license is not executory.

*Third*, Plaintiffs contend that the Adversary Proceeding implicates only a "non-controversial application of federal trademark law," to wit, whether the absence of quality control provisions means that the remedy in the Award is not a license. Opp. at 8. Plaintiffs are mistaken. As demonstrated in Defendants' Motion, the issue of whether the Award created a non-assignable

5

trademark license despite the alleged lack of quality controls is a substantial issue of non-bankruptcy law that will require both interpretation of the Award and Judgment as well as federal trademark law.

Although Plaintiffs cite *Drs. Assocs., Inc. v. Desai*, No. CIV.A.10-575, 2010 WL 3326726 (D.N.J. Aug. 23, 2010) as an example of a case in which the trademark issue did not require substantial and material application of the Lanham Act, and thus mandatory withdrawal was denied (Opp. at 8), the case is so distinct as to *support* withdrawal of the reference. It turned on confirmation of an arbitration award, not trademark law:

> DAI is not asking the Court to enforce an arbitration agreement; it is merely asking the Court to confirm arbitration awards already granted by an arbitrator. Likewise, DAI's Lanham Act claims do not require "substantial and material" consideration for the resolution of the case. The claimed trademark infractions appear to be contingent upon the validity of the arbitration award, which terminated the franchisee's rights to continue to operate the Subway sandwich shops

*Id*. at *5. Here, in contrast, the Bankruptcy Court *is* being asked to delve into substantive issues of trademark validity and enforcement of a judgment.

In fact, **Plaintiffs cite no case in which a case implicating an issue under the Lanham Act has ever *not* been subject to mandatory withdrawal of the reference**. To the contrary, as a Middle District of Florida district court observed, "these statutes [Lanham Act, RICO and Sherman Act], ***by their very nature, require substantial and material consideration of non-bankruptcy code federal law***." *Astro Tel*, *supra*, 2011 U.S. Dist. LEXIS 114570, at *5 (emphasis added). *See also Eli Global, LLC v. Univ. Directories, LLC*, 532 B.R. 249, 252-53 (M.D.N.C. 2015) ("The resolution of Defendant Debtors' trademark infringement claim will require significant consideration of non-Title 11 federal law."); *Burger King Corp. v. B-K of Kan., Inc.*, 64 B.R. 728, 731 (D. Kan. 1986) (trademark infringement claim based on unauthorized use of mark entailed

6

material and substantial consideration of non-Title 11 law); *In re McCrory Corp.*, 160 B.R. 502, 505-07 (S.D.N.Y. 1993) (trademark infringement claim supported mandatory and permissive withdrawal of the reference and transfer of venue).

*Finally*, Plaintiffs argue that their argument that a trademark license would nonetheless be transferable under the circumstances is a matter of bankruptcy law, based on policy considerations, and does not involve substantial and material consideration of non-bankruptcy law. Opp. at 9. But the argument that this balancing of policy interests involves substantial and material consideration only of bankruptcy law but not trademark law is frivolous, if not conceptually impossible. It is difficult to conceive of a more substantial and material consideration of trademark law than an analysis balancing the policy reasons underlying this universal rule against assignment of trademark licenses against the policy reasons that Plaintiffs contend support transferability in the bankruptcy context. And there is little balancing to be done if the issues on one side of the fulcrum are important and those on the other are not.

### TRANSFER OF VENUE TO THE CALIFORNIA DISTRICT COURT IS APPROPRIATE

Once the reference is withdrawn, the logical court to address these issues is the California District Court that issued the Judgment with the license rights that Plaintiffs are attempting to recharacterize. As discussed in the Motion, courts routinely transfer venue when there is or was a related action in a different venue, even in less compelling circumstances. *See, e.g.*, *UMB Bank, N.A. v. Sun Capital Partners V, LP*, 2019 WL 9049056, at *2 (S.D. Fla. June 12, 2019) ("[T]he single most significant circumstance favoring transfer . . . is the existence of a related action in another district."); *Plotkin v. United States*, 2011 WL 1103469, at *4 (M.D. Fla. Mar. 24, 2011) (because "the original judgment" from the Eastern District of Missouri was ambiguous, "jurisdiction . . . should be returned to the Eastern District of Missouri—the court best suited to

7

interpret and apply the judgment"); *The Dispatch Printing Co. v. Zuckerman*, 2016 WL 335753, at *2-3 (S.D. Fla. Jan. 27, 2016) (transferring discovery dispute to the Southern District of Ohio, the forum court for the underlying litigation, because the length and complexity of the Ohio proceedings required a decisionmaker "familiar[] with the full scope of the issues involved").

Plaintiffs argue that delay as the result of the transfer will harm the sale process by leaving bidders uncertain as to what assets they are bidding upon, to the detriment of creditors. Monster Energy is the largest of those creditors, and has no interest in delay. As noted, the SJ Motion will be fully briefed for decision by whichever court is deemed proper. But withdrawal of the reference is not just appropriate but *mandatory*. The vague claim of prejudice does not withstand scrutiny in any event. Under the present schedule, the Debtors have until March 24, 2023 to identify a stalking horse bidder, while the hearing on the SJ Motion is presently set for March 29, 2023, which means the stalking horse bid will necessarily be formulated in a state of uncertainty over the transferability of the trademark license rights. Other bidders can do likewise. Furthermore, any harm is self-inflicted: *the Adversary Proceeding was commenced over four months after the bankruptcy filing even though all relevant facts were known at the time of filing and nothing has changed*. Plaintiffs filed their bankruptcy case on October 10, 2022 knowing that Defendants would object to a transfer without their consent, yet waited until February 17, 2023 to file the Complaint.

**WHEREFORE**, Monster Energy Company and Orange Bang, Inc. respectfully request that the Court enter an Order: (i) withdrawing the reference of the Adversary Proceeding to the United States Bankruptcy Court for the Southern District of Florida, (ii) transferring the Adversary Proceeding to the United States District Court for the Central District of California, and (iii) granting all other further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: March 24, 2023 | **AKERMAN LLP** |
| | */s/ Michael I. Goldberg* |
| | Michael I. Goldberg |
| | Florida Bar No. 886602 |
| | Eyal Berger |
| | Florida Bar No. 11069 |
| | 201 East Las Olas Boulevard, Suite 1800 |
| | Fort Lauderdale, FL 33301 |
| | T: (954) 463-2700 /F: (954) 463-2224 |
| | michael.goldberg@akerman.com |
| | eyal.berger@akerman.com |
| | |
| | -and- |
| | |
| | **PACHULSKI STANG ZIEHL & JONES LLP**[2] |
| | Richard M. Pachulski (pro hac vice) |
| | Ira D. Kharasch (pro hac vice) |
| | Robert J. Feinstein (pro hac vice) |
| | Teddy M. Kapur (pro hac vice) |
| | Steven W. Golden (pro hac vice) |
| | 10100 Santa Monica Blvd., 13th Floor |
| | Los Angeles, CA 90067-4003 |
| | T: (310) 277-6910 /F: (310) 201-0760 |
| | rpachulski@pszjlaw.com |
| | ikharasch@pszjlaw.com |
| | rfeinstein@pszjlaw.com |
| | tkapur@pszjlaw.com |
| | sgolden@pszjlaw.com |
| | |
| | *Counsel to Monster Energy Company* |
| | |
| | *AND* |
| | |
| | **FENDER, BOLLING AND PAIVA, P.A.** |
| | |
| | */s/ G. Steven Fender* |
| | G. Steven Fender, Esq. |
| | Fla. Bar No. 060992 |

---

[2] Michael I. Goldberg hereby certifies that the undersigned attorneys are appearing *pro hac vice* in this matter pursuant to court orders in the main case, Case No. 22-17842-PDR, dated as follows: (i) Teddy M. Kapur, October 14, 2022 [ECF 103]; (ii) Robert J. Feinstein, October 17, 2022 [ECF 133]; (iii) Steven Golden, October 17, 2022 [ECF No. 134]; (iv) Richard M. Pachulski, October 18, 2022 [ECF 158] ; and (v) Ira D. Kharasch, October 18, 2022 [ECF 159].

>P.O. Box 1545
>Ft. Lauderdale, FL 33302
>T: (407) 810-2458
>steven.fender@fender-law.com
>
>-and-
>
>**KTBS LAW LLP**[3]
>Thomas E. Patterson, Esq. (pro hac vice)
>Nir Maoz (pro hac vice)
>1801 Century Park East
>Twenty Sixth Floor
>Los Angeles, CA 90067
>T: (310) 407-4000
>F: (310) 407-9090
>tpatterson@ktbslaw.com
>nmaoz@ktbslaw.com
>
>*Counsel to Orange Bang, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the forgoing was served via CM/ECF Notice of Electronic Filings to all parties registered to receive electronic noticing in this case on March 24, 2023.

>By: *s/ Michael I. Goldberg*
>   Michael I. Goldberg, Esq.

---

[3] G. Steven Fender hereby certifies that the undersigned attorneys are appearing pro hac vice in this matter pursuant to court orders in the main case, Case No. 22-17842-PDR, dated as follows: (i) Thomas E. Patterson, November 8, 2022 [ECF 269]; (ii) Nir Maoz, November 8, 2022 [ECF 270].